CA No: 14-50162

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) D.C. No: 05:12-CR-057-VAP |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| PAUL EDWARD BELL | ) |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Brief in Support of Motion to Withdraw as
Counsel Pursuant to *Anders v. California*

Appeal from the U.S. District Court, Central District of California

Honorable Virginia A. Phillips
United States District Judge

AMY FAN
Saint Martin & Fan
P O Box 882228
Los Angeles, California 90009
Tel: (310) 645-9383
Fax: (310) 641-2501

Attorneys for Defendant-Appellant

# **TABLE OF CONTENTS**

**Page**

STATEMENT OF THE CASE.......................................................................2

    Statement of Jurisdiction ...............................................................2

    Course of Proceedings & Custody Status.......................................2

    Statement of Facts........................................................................11

        A.      Offense .................................................................11

        B.      Plea Agreement ....................................................15

        C.      Change of Plea Hearing........................................18

        D.      Sentencing ...........................................................19

                1.      Presentence Investigation Report (PSR)...................19

                2.      Defendant's Sentencing Position ............................23

                3.      Government's Sentencing Position .........................24

                4.      Sentencing Hearing................................................25

DISCUSSION OF LEGAL ISSUES .......................................................30

        A.      Introduction .........................................................30

        B.      The Conviction ....................................................31

        C.      Pretrial Motions...................................................31

        D.      Sentence...............................................................32

i

E.     Conclusion ........................................................................................32

Certificate of Related Cases ........................................................................34

Certificate of Compliance ...........................................................................35

Certificate of Service ...............................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Anders v. California*,
   386 U.S. 738 (1967)..................................................................1, 30

*United States v. Booker*,
   543 U.S. 220 (2005)......................................................................32

*United States v. Ayers*,
   924 F.2d 1468 (9th Cir. 1991) ......................................................6

*United States v. Griffy*,
   895 F.2d 561 (9th Cir. 1990) .......................................................30

*United States v. Jeronimo*,
   398 F.3d 1149 (9th Cir. 2005) .....................................................32

*United States v. Lopez-Armenta*,
   400 F.3d 1173 (9th Cir. 2005) ................................................ 31-32

*United States v. Ullyses-Salazar*,
   28 F.3d 932 (9th Cir. 1994) .........................................................31

*United States v. Villalobos*,
   333 F.3d 1070 (9th Cir. 2003) .....................................................31

## FEDERAL STATUTES

18 U.S.C. § 922(g)(1)......................................................................3

18 U.S.C. § 1326(a) .......................................................................28

18 U.S.C. § 1591 (a)(1)....................................................................2

18 U.S.C. § 1591 (a)(1), (a)(2), (b)(1) ........................................15, 23

18 U.S.C. § 1591 (b)(2) ......................................................................20

18 U.S.C. § 1594 (c) ...........................................................................2

18 U.S.C. § 3231 .................................................................................2

18 U.S.C. § 3553(a) ...............................................................26, 28, 32

18 U.S.C. § 3553(a)(1) – (7) ..............................................................16

18 U.S.C. § 3559(e) ...........................................................................16

18 U.S.C. § 3585(b) ...........................................................................16

18 U.S.C. § 3742 .................................................................................2

28 U.S.C. § 1291 .................................................................................2

Fed.R.Crim.P. 11 ...............................................................................31

Fed.R.Crim.P. 11(a)(2) .....................................................................31

Fed.R.Crim.P. 11(c)(1)(C) ....................................... 10, 15, 26, 28, 31, 32

## STATE STATUTES

California Penal Code Section 261.5 .......................................................6

California Penal Code Section 273.5(A) .................................................6

## OTHER

Federal Rules of Evidence 403 ...............................................................6

Federal Rules of Evidence 404(b) ...................................................................6

Federal Rules of Evidence 803(6) ...................................................................7

Federal Rules of Evidence 902(11).................................................................7

## SENTENCING GUIDELINES

U.S.S.G. § 2G1.3.............................................................................................19

U.S.S.G. § 2G1.3(a)(1) ...................................................................................21

U.S.S.G. § 2G1.3(a)(2) ...................................................................................20

U.S.S.G. § 2G1.3(b)(2)(B)...................................................................20, 21, 22

U.S.S.G. § 2G1.3(b)(4) ...........................................................................20, 21

U.S.S.G. § 2K2.1.............................................................................................22

U.S.S.G. § 2K2.1(b)(4)(B)..............................................................................22

U.S.S.G. § 3A1.1(b)(1) ...................................................................................24

U.S.S.G. § 3B1.1(b) .............................................................................20, 21, 22

U.S.S.G. § 3D1.2, Application Note 6 ...........................................................20

U.S.S.G. § 3D1.4,.............................................................................................23

U.S.S.G. § 3E1.1 .............................................................................................23

U.S.S.G. § 4B1.1(b) ........................................................................................23

CA No: 14-50162

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) D.C. No: 05:12-CR-057-VAP |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| vi. | ) |
| | ) |
| PAUL EDWARD BELL | ) |
| | ) |
| Defendant-Appellant. | ) |
| ——————————————— | ) |

————————————————

Brief in Support of Motion to Withdraw as
Counsel Pursuant to *Anders v. California*

————————————————

Appellate counsel hereby moves to be relieved as counsel for Appellant,

Paul Edward Bell. This motion is made pursuant to *Anders v. California*, 386 U.S.

v. 738 (1967) and is based on counsel's failure to discover any arguable issues on

appeal.

## STATEMENT OF THE CASE

### Statement of Jurisdiction

This appeal is from a judgment rendered by the Honorable Virginia A. Phillips, United States District Court Judge, on March 31, 2014, sentencing Appellant to 360 months imprisonment followed by a life term of supervised release with terms and conditions. Judgment was entered on April 9, 2014. Appellant filed a timely notice of appeal on March 31, 2014. (ER II 75-82, 74; CR 415, 416, 395).[1]

The district court had jurisdiction pursuant to 18 U.S.C. § 3231; this court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

### Course of Proceedings & Custody Status

On August 1, 2012, Mr. Bell was charged in a multi-count, multi- defendant Indictment with conspiracy to engage in sex trafficking, in violation of 18 U.S.C. § 1594(c) (count 1), sex trafficking of minors and/or by force, fraud, or coercion in violation of 18 U.S.C. §1591 (a)(1) (counts 2-5), and felon in possession of a

---

[1] The Excerpt of Record is referenced as "ER" followed by the Volume Number and Page Number(s). The Sealed Excerpt of Record is contains in Volume IV and consists of original *under seal* documents filed before the district court. The "PSR" refers to the Presentence Investigation Report and is contained within the Sealed Excerpt of Record pursuant to Ninth Circuit Rule 30-1.10, and is followed by the applicable paragraph number. "CR" refers to the Clerk's record and is followed by the applicable docket control number.

firearm in violation of 18 U.S.C. § 922(g)(1) (count 6).[2] (ER III 322-330; CR 1). On August 9, 2012, Mr. Bell appeared at his initial appearance following his arrest and was also arraigned on the Indictment where he entered a not guilty plea. Mr. Bell was ordered permanently detained without bail. Jury trial was set for October 2, 2012. (CR 34-35).

On September 18, 2012, the Court granted the parties' first stipulation for a continuance of the trial date from October 2, 2012 to April 16, 2013. (CR 100). A continuance was requested in part "due to the nature of the prosecution and the number of the defendants in this case, including the charges in the indictment and the voluminous discovery produced to the defendants, the case is so unusual and so complex that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the Speedy Trial Act time limits." (CR 97). Defendants' counsels also needed additional time to confer with the defendants, review the discovery, conduct investigations and to prepare for trial. (CR-97).

---

[2] Co-defendants Samuel Rogers, Christopher Weldon, Javiya Brooks, Kimberly Alberti and Kristy Harrell were also charged with conspiracy to engage in sex trafficking as charged in count 1 as well as individual counts with sex trafficking, sex trafficking of minors as alleged in counts 7 through 17, and interstate transportation in aid of enterprises by Defendant Yan as charged in count 18. (ER III 322-325, 331-342).

On March 18, 2013, the Court granted the parties' second stipulation for a trial continuance from April 16, 2013 to October 29, 2013. (CR 136). The defendants needed additional time as they continued to review discovery, to perform investigations, research legal issues and prepare for trial. (CR 136).

On September 30, 2013, a status conference was held where the parties were in agreement to a continuance of the trial date to accommodate a personal matter on behalf of counsel for co-defendant Gary Rogers. Jury trial was continued from October 29, 2013 to January 7, 2014. Hearing on pretrial and evidentiary motions was continued to December 19, 2014. (9/30/2013 RT 4, 10, 12-13; ER III 311, 317, 319-320; CR 211). The Court's written order granting the parties' third stipulated continuance followed on October 4, 2013. (CR 210, 212).

On November 20, 2013, a First Superseding Indictment (FSI) was filed against Defendants Paul Bell (counts 1 - 6), Samuel Rogers (counts 1, 7-12) and Gary Rogers (counts 1, 13). The FSI removed the co-defendants that entered pleas from the caption along with their respective counts. (ER III 294-307; CR 324). On December 11, 2013, Mr. Bell entered a not guilty plea to the First Superseding Indictment. (CR 301).

Both Mr. Bell and the government filed pretrial motions and moved to admit and to exclude preclude evidence in preparation for trial. A motions hearing was held on December 19, 2013. (CR 318) Specifically:

4

- Mr. Bell's moved *in limine* to exclude expert testimony ("MIL 1). (CR 189, 269). The Court denied Mr. Bell's motion finding that the government's expert disclosure was timely and sufficiently set forth the qualifications, background and proposed opinion testimony. Additionally, there was no evidence to suggest that the expert's testimony, who was also the investigating officer, is suspect *per se*, nor is there a requirement that an expert be an academic or clinical expert. (ER II 280-281; CR 320).

- Mr. Bell argued for discovery ("MIL 2) contending that the government failed to provide 404(b) evidence and expert disclosures. The Court found the government's expert disclosures sufficient. (12/19/2013 RT 41-42, 55; ER II 238-239, 281; CR 190, 268, 318, 320).

- Mr. Bell moved for a hearing as to make preliminary findings regarding co-conspirator statements ("MIL 3"). (CR 191, 272). The Court was satisfied there was sufficient showing to establish the existence of a conspiracy for purposes of admitting the statements. (ER II 282; CR 320).

- Defendant also moved for a severance for trial. (12/19/2013 RT 55-61; ER II 252-258; CR 192, 271). The Court denied Mr. Bell's motion finding that Mr. Bell's theory of the case - that he was not in a conspiracy with co-defendant Rogers – was similar to finger pointing and thus not conflicting nor antagonistic.

Also, a proper limiting instruction would cure any possible prejudice from "spillover evidence". (ER II 277-279; CR 320).

- Mr. Bell also moved to exclude Rule 404(b) evidence. (12/19/2013 RT 13-49;ER II 210-246; CR 195, 273) . The Court first found that the government timely gave notice of its intent to introduce 404(b) evidence. Then determined that Mr. Bell's prior 2004 conviction in violation of Penal code sections 261.5 and 273.5(A), sex with a minor and inflicting corporal injury on a cohabitant, as well as his 2008 conviction also for inflicting corporal injury on a cohabitant to satisfy the factors in *United States v. Ayers*, 924 F.2d 1468, 1472-73 (9th Cir. 1991)[3], and that its probative value outweighed the prejudice of its introduction. (ER II 284-287; CR 320).

The Court also permitted introduction of other bad act conduct with the exception of membership in a street gang thus precluding its introduction. (ER II 287-288; CR 320).

- The government's moved *in limine* to exclude evidence of victims' other sexual behavior or predisposition pursuant to Federal Rules of Evidence 403

---

[3] In *United States v. Ayers*, 924 F.2d 1468, 1472-73 (9th Cir. 1991), the Ninth Circuit established a four-part test to determine whether evidence of other crimes or acts is admissible under Rule 404(b)

(1) sufficient evidence must exist for the jury to find that the defendant committed the other acts; (2) the other acts must be introduced to prove a material issue in the case; (3) the other acts must not be too remote in time; and (4) if admitted to prove intent, the other acts must be similar to the offense charged. (ER II 285; CR 320).

and 412. ("MIL 4). (CR 193, 200, 304).   The Court granted the government's

motion "barr[ing] the defense from introducing evidence, referring to, or arguing

before the jury, as to any sexual conduct of the victims, including prostitution,

which occurred before or after the time period during which the crimes charged in

the FSI allegedly took place." (12/19/2013 RT 53-55; ER 250- 252, 282-284; CR

318, 320).

-      Government also moved *in limine* to admit evidence pursuant to

Federal Rules of Evidence 803(6) and 902(11)  ("MIL 8") (CR 194), with Mr.

Bell's opposition filed on September 30, 2013 (CR 199).  The government filed a

supplemental motion on November 25, 2013. ("MIL 9")  (CR 251), and Mr. Bell's

opposition to the supplemental motion was filed on December 4, 2013. (CR 270).

The Court granted the government's motion  subject to properly laying foundation

prior to one of the documents being admitted.  (ER II 290-292; CR 320).

-      Government's motion *in limine* to admit statements of defendants in

compliance with *Bruton v. United States*  ("MIL 7") (CR 196) with Mr. Bell's

opposition filed on September 30, 2013 (CR 201, 266) , and government's reply

filed on December 12, 2013 (CR 305).   At hearing, only co-defendant Samuel

Rogers remained for trial with Mr. Bell; as such, the Court agreed with the

government that his statement  was non –hearsay and did not need redacting prior

to  its admission.  (12/19/2013 RT 58-59; ER II 255-256, 290, CR 318, 320).

- The Court also granted the government's sealed *in limine* motion to admit Mr. Bell's statement as impeachment ("MIL 10") in the event he testified at trial. (12/19/2013 RT 61-62; ER II 258-259, 292-293; CR 318, 320).

- The Court also granted the government's *sealed* motion *in limine* to preclude reference to victims' and witness drug use, misdemeanor convictions not involving dishonesty, arrests that did not result in conviction, post–charged offense sexual behavior or arrest and juvenile adjudications. ("MIL 6") (12/19/2013 RT 42-53; ER II 239-250, 288-289; CR 208, 217, 263, 278, 320).

Also at the December 19, 2013 hearing, Mr. Bell orally requested a continuance of the trial date:

> "Your Honor, we did not request additional time because we did not believe that the Court would grant any additional time. Given the magnitude of this case, given the fact that the plea negotiations broke down very late, given the new discovery that we received, we could use more time. We understand, I believe, that the Court's last ruling was that this was a firm date and that there would be no more continuances. So we talked to the Government briefly and to counsel briefly about additional time, but given the court's position we did not file anything. So, our position, I guess - - I'm not trying to be confusing. Our position is we would like additional time; we don't think that would be possible to get it."

The Court denied the request:

> "All right. Well, we will start trial on January 7th. The Court staff in the jury section, in particular, has been going to extraordinary efforts to get a larger than usual panel here for January the 7th. And there's been no motion or request or stipulation for yet another continuance of the trial date, so we will begin trial on January the 7th."
> (12/19/2013 RT 4; ER II 201).

The court also reminded the defendants that it was the court's practice not to take a guilty plea pursuant to a plea agreement any later than one week before trial. The court also stated it was not trying to influence the defendant's decision and that the defendants should consult with their attorneys and listen to their lawyers. If the parties intended to enter a guilty plea in this case, it would have to take place no later than December 30, 2013 and any pleas entered after that date would be without the benefits of a plea agreement. The district court noted the imposition on the members of the public, jurors, who travel to court to find out that their services are not needed along with the court's calendar of scheduled trials as reasons for the court's policy. (12/19/13 RT 8-9; ER II 205-206).

On January 10, 2014, the parties' appeared for a status conference on Mr. Bell's *ex parte* application for a continuance of the trial not less than from two weeks from January 14, 2014.[4] Mr. Bell asserted the voluminous discovery and late disclosures made it impossible to prepare for trial. (ER IV 43-90; CR 340). The Court denied the request:

> "But taking all of this together, it would not be the right way
> to approach it, to just look at them singly. Because as the defense
> points out, you have to look at it all together and look at the
> timing. I don't feel there is good cause for a continuance. There
> is just not good cause.

---

[4] On December 31, 2013, the government filed an *ex parte* application for a one week continuance, with the reasons set forth *under seal*. Mr. Bell had no objection to the continuance which was granted on January 2, 2014. (CR 323, 329).

In addition, there is a much smaller - - this is just a side note to that.
I have granted several requests for continuances in this case already,
And my trial calendar for  - - it wouldn't be possible to continue it for
a week or two.  If I had to continue it, I would have to continue it for
a very long period of time.  I mean, for several months.  And I don't
think that would be agreeable to either side.  But that's a secondary
consideration.  I just don't think there is good cause here, taking
everything as a whole.  So is there anything else that we need to bring up,
or I'll let you go back  to preparing for trial?

Mr. Aaron:

Other than we just would reiterate that we're not ready.  But
there is nothing else - -we do have a problem in that the
Government has said that they are not going to offer 404(b).
But under some situations, depending upon her testimony, they
may offer it.  In that case, we are in that situation we are
now where we have evidence that may come against our client
that we've had no opportunity to investigate.
(01/10/2014 RT 38-39; ER II 191-192; CR 350).

On January 13, 2014, the parties filed a Rule 11(c)(1)(C)[5] plea agreement.

(CR 345).  On January 14, 2014, Mr. Bell entered a guilty plea to count 3 of the

Indictment with sentencing scheduled for March 31, 2014.  (CR 349).

On March 7, 2014, Mr. Bell filed his position with respect to sentencing

factors.  (CR 375).  The government filed their position with respect to the

---

[5] Federal Rule of Criminal Procedure 11(c)(1)(C) provides that if the defendant
pleads guilty, the government "will agree that a specific sentence . . .  is the
appropriate disposition of the case . . . (such a recommendation or request binds the
court once the court accepts the plea agreement)."

presentence investigation report on March 10, 2014. (CR 376). An amended plea agreement between the parties was filed on March 17, 2014. (CR. 380).

On March 31, 2014, the court sentenced Mr. Bell on count 3 of the FSI and the underlying indictment to 360 months in custody followed by a life term of supervised release. (CR 415).

Mr. Bell is currently in the custody of the Bureau of Prisons serving his sentence. According to the Bureau of Prison's website, his projected release date is September 26, 2038.

**Statement of Facts**

### A.     Offense [6]

Between at least approximately January 2011 through July 2011, defendant knowingly recruited, enticed, harbored, transported, provided, obtained, and maintained by any means, and benefitted financially from his participation in a venture which recruited, enticed, harbored, transported, provided, obtained, and maintained individuals, including Victim 3, Victim 4, Victim 5, and Victim 7 (the "Victims"), among others, knowing that force threats of force, fraud and coercion would be used to cause the Victims to engage in commercial sex acts and also knowing that the Victims had not yet attained the age of 18 years and that they

---

[6]     The offense facts are obtained from the factual basis for the guilty plea set forth by the government and changes made by defendant and agreed upon by the government. An amended plea agreement noting the changes was thereafter filed. (01/14/2014  RT 25-29 ; ER I 57- 61; CR 370, 380).

would be caused to engage in commercial sex acts. Defendant's actions were in or affecting interstate commerce.

Within Riverside and Los Angeles Counties, defendant would recruit female victims to employ them in his sex prostitution business. He would then harbor them in hotels on or near Long Beach Boulevard in the general area of Compton, California, and at his residence located on Euclid Boulevard in Lynwood, California (the "Euclid Residence").

Defendant had female victims (including the Victims) work for him as prostitutes and in doing so, he would have them stand and walk around in areas known for prostitution, including Long Beach Boulevard, to solicit 'dates,' or male customers for prostitution. Defendant instructed the female victims to charge certain amounts of money for different types of sexual acts. Defendant also told minor victims to follow certain rules. For example, minor victims were told not to get into vehicles with more than one customer in it, and were told to give all the money they earned from prostitution to defendant soon after a "date" was complete.

Defendant also maintained minor victims knowing that they would be caused to engage in commercial sex acts. For example, on or about February 17th, 2011, defendant drove Victim 3, Victim 5, and a co-conspirator to a medical health clinic in order to have them tested for sexually transmitted diseases.

12

Defendant would use his cellular phone to keep in touch with and instruct the minor victims and his co-conspirators, some of whom are co-conspirators in this case. Defendant benefitted financially from causing the minor to engage in prostitution.

Among others, defendant used Victim 3 (then 16), Victim 4 (then 17), Victim 5 (then 15), and Victim 7 (then 17) as prostitutes and harbored them at his Euclid residence. One of the co-conspirators (a co-conspirator in this case) acted as defendant's "bottom," meaning his most trusted prostitute ,who was, at times, responsible for managing and taking care of defendant's other prostitutes. From at least January 2011 to July 2011, that co-conspirator lived mainly at the Euclid residence and supervised defendant's prostitutes at his direction.

Also, at times, when defendant was incarcerated, other pimp co-conspirators (three of whom are co-codefendants in this case) would supervise the prostitution activities of defendant's prostitutes, including minor victims such as Victim 3. At times, when one of the pimp co-conspirators was incarcerated, defendant would harbor and supervise the prostitution activities of prostitutes who normally worked for that co-conspirator, including minor victims such as Victim 4.

Defendant and the pimp co-conspirators would often discuss the management of the prostitutes, the prostitution business, and the proceeds of prostitution on joint conference telephone calls when talking on the telephone.

Furthermore, Victim 3 and Victim 5, both of whom worked for defendant as prostitutes, were first recruited to engage in commercial sex acts by a pimp co-conspirator and another co-conspirator, who was that pimp co-conspirator's "bottom."

Also, co-defendant aided defendant in managing his prostitution business while he was incarcerated in August of 2011, by picking up prostitution proceeds, driving prostitutes to dates, and making phone calls for defendant in order to further his prostitution business, among other thing.

Specifically, in April of 2011, Victim 4, then 17, worked as a prostitute for defendant while a pimp co-conspirator (a co-defendant in this case) was incarcerated. During that time, defendant harbored Victim 4 at the Euclid residence with other prostitutes defendant employed. While working as a prostitute under defendant's supervision and direction, on or about April 6, 2011, defendant physically abused Victim 4 for not performing as a prostitute and for acting up. Therefore, defendant used force to cause Victim 4 to engage in commercial sex acts.

Also, from approximately May to August 2011, Victim 7, then 17, worked as a prostitute for defendant. During that time, defendant instructed Victim 7 to reside at the Euclid residence with other prostitutes defendant employed. During that time, defendant knew that Victim 7 was 17 years old. Defendant often

threatened Victim 7 with force during phone calls with Victim 7 while defendant was incarcerated.

Also, on or about - - -on or before April 7, 2008, defendant was convicted of a felony crime for which he received a term of imprisonment exceeding one year. On or about May 4, 2011, in Los Angeles County, within the Central District of California, defendant knowingly possessed a firearm; namely, an Intratec model Tec-DC9 pistol, with the serial number removed, in and affecting interstate and foreign commerce . (01/14/2014  RT 25-29 ; ER I 57- 61; CR 370, 380).

## B.    Plea Agreement

On January 13, 2014, the parties reached a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C),  where the district court's failure to accept the plea agreement would nullify the agreement with the exception of the government's right to refile and tolling of the statute of limitations.  The agreement also contained various terms and conditions. (ER II 131-132; PA[7] ¶2).

The parties agreed that the defendant would enter a guilty plea to count 3 of the First Superseding Indictment.  A conviction for the charged offense in violation of 18 U.S.C. § 1591(a)(1), (a)(2) , as set forth in subsection (b)(1) of that statute, triggered a statutory maximum sentence of life imprisonment and a statutory mandatory minimum sentence of 15 years imprisonment (where the offense

---

[7] "PA" refers to the plea agreement followed by the respective paragraph.

involved force, threats of force, fraud, or coercion, or any combination of such means), followed by a five year period of supervised release. (ER II 136-137; PA at ¶s 6, 7). Additionally, if the defendant is convicted of a federal sex offense in which a minor is the victim and if defendant has a prior sex conviction in which a minor was the victim, defendant shall be sentenced to life imprisonment pursuant to 18 U.S.C. § 3559(e). (ER II 137; PA ¶ 7).

As the parties agreed to a Rule 11(c)(1)(C) agreement, the parties agreed that taking into account the factors listed in 18 U.S.C. § 3553(a)(1) – (7), an appropriate disposition of this case is that the court impose a sentence of 360 months' imprisonment; lifetime supervised release with conditions to be fixed by the Court; no fine; $100 special assessment; and an amount of restitution to be determined by the Court if a restitution request is made. The parties also agreed that no prior imprisonment (other than credits that the Bureau of Prisons may allow under 18 U.S.C. § 3585(b)) may be credited against this stipulated sentence, including credit under Sentencing Guideline§ 5G1.3. (ER   ; PA ¶14).

Mr. Bell also agreed to waive his right to pursue pretrial motions that have been filed or could be filed. (ER II 146; PA ¶15(h)).

He also agreed to waive his right to appeal his conviction (except for a claim of involuntary plea) and also agreed to give up his right to appeal any portion of

the sentence son long as the Court imposes the agreed upon sentence. (ER II 146-147; PA ¶s 16, 17).

Defendant's obligations contained in the plea agreement included requiring him to enter his guilty plea to count 3 of the FSI and to abide by all agreements regarding sentencing contained in the agreement and affirmatively recommend to the court that it impose a sentence as agreed to by the parties. (ER 132; PA ¶3(a), (c)). Defendant also agreed to the following conditions of probation or supervised release: computer –related restriction, computer monitoring and cost not to exceed $32 per month; submission to search of property or person at any time, sex offender registration, participation in mental health counseling and treatment, restriction on viewing or possessing sexually explicit materials , refrain from contacting any victims, restrictions on contacting any person under age of 18, and not frequent or loiter within 100 feet of any places primarily used by persons under the age of 18, including but not limited to school yards, parks, swimming pools and playgrounds.  Defendant also agreed to have his employment approved by the probation officer, and also agreed to restrictions regarding location of his residence. (ER II 133-137; PA ¶s 3(h)(i) – (xvii)).

Under the government's obligations, it agreed not to contest the facts in the agreement, to abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the court that it impose a sentence in

accordance with the parties' stipulation, and that that time of sentencing, move to dismiss the remaining counts of the FSI and the underlying indictment. (ER II 138; PA ¶ 4).

### C. Change of Plea Hearing

On March 17, 2014, following Mr. Bell's change of plea hearing, the parties filed a written amended plea agreement. By stipulation as expressed at the change of the plea, agreed, that 1) Mr. Bell entered a guilty plea pursuant to a plea agreement filed on January 13, 2014; 2) during the change of plea hearing, the parties agreed to certain changes to the factual basis. Specifically, the parties agreed to replace the names of co-defendants with the word "co-conspirator" or "co-conspirators."[8] The parties also agree to excise the sentences contained the plea agreement on page 13, lines 2 through 6, and page 14, lines 20 through 21; 3) as requested by defendant, the parties hereby file an amended plea agreement that incorporates this aforementioned changes. The remaining terms of the plea agreement were not altered. (ER II 106, 107; CR 380).

At the start of the plea hearing, discussion was made as to whether Mr. Bell wanted to pursue his plea and he decided to proceed. (01/14/2014 RT 8-9; ER I

---

[8] The amended factual basis replaced co-defendants' names with references as "co-conspirator" as verbally agreed to at the change of plea, but the written factual basis differentiated the co-conspirators as "pimp co-conspirator" or "co-conspirator.".

38-39). A discussion of the plea agreement took place with Mr. Bell and the binding nature of the plea agreement upon the court if accepted. (01/14/2014 RT 10-13, 16-17, 21; ER I 42- 45, 48-49). Mr. Bell was advised of the consequences of entering a guilty plea, advised of his Constitution Rights and that he wished to give up those rights (01/14/2014 RT 13-15; ER 45-47). He was advised of the maximum and minimum statutory penalties and the advisory nature of the U.S. Sentencing Guidelines. (01/14/2014 RT 16-21; ER 48-53). The charge and elements of the offense and factual basis were also read to Mr. Bell and which he also acknowledged. (01/14/2014 RT 23-29; ER 55-61).

### D. Sentencing

### 1. Presentence Investigation Report (PSR)

A presentence investigation report was prepared and disclosed on or about February 24, 2014. (ER IV 14-42). The probation officer calculated the offense level using the Guidelines in effect on November 1, 2013. The behavior involving co-defendants Alberti, S. Rogers, Weldon, and Brooks in recruiting and harboring minors for prostitution is considered relevant conduct. (ER IV 25-26; PSR ¶ 48). In determining the offense level, USSG § 2G1.3 applied to the offense involving Victim 4. Pursuant to subsection (d), if the offense involved more than one minor, multiple counts (chapter three, part D) shall be applied as if the persuasion, enticement, coercion, travel, or transportation to engage in commercial sex act or

prohibited sexual conduct of each victim had been contained in a separate count of conviction. Mr. Bell's factual basis specifically established violation of 18 U.S.C. § 1591(b)(2), as to Victims 3, 5 and 7. Thus the offense level computation is based on the count of conviction and three separate pseudo counts, each addressing the offense involving a single victim. (ER IV 25-26; PSR ¶ 50). None of the counts are grouped together because they do not involve substantially the same harm within the meaning of U.S.S.G. § 3D1.2, Application Note 6. An additional pseudo count applies to an admitted violation for 18 U.S.C. § 922(g), felon in possession of a firearm. (ER IV 26; PSR ¶ 51).

**Group 1: Victim 3:** (16 years of age):

Base Offense Level:                                                                                  +30
    (U.S.S.G. § 2G1.3(a)(2)

Specific Offense Characteristics:
    Undue influence on minor
    (U.S.S.G. § 2G1.3(b)(2)(B)
                                           + 2
    Offense involved commission of sex or sexual contact
    (U.S.S.G. § 2G1.3(b)(4)                                                                      + 2

Adjustment for Role in the Offense
    Managerial or supervisor (but not organizer or leader)
    (U.S.S. G. § 3B1.1(b)

             Adjusted Offense Level                                              37

**Group 2: Victim 4:** (17 years of age):

Base Offense Level:                                                                                  +34
    (U.S.S.G. § 2G1.3(a)(1)

Specific Offense Characteristics:
    Undue influence on minor
    (U.S.S.G. § 2G1.3(b)(2)(B)            + 2

    Offense involved commission of sex or sexual contact
    (U.S.S.G. § 2G1.3(b)(4)             + 2

Adjustment for Role in the Offense
    Managerial or supervisor (but not organizer or leader)
    (U.S.S. G. § 3B1.1(b))             + 2

          Adjusted Offense Level        40[9]

**Group 3: Victim 5:** (15 years of age)

Base Offense Level:                +30
    (U.S.S.G. § 2G1.3(a)(1)

Specific Offense Characteristics:
    Undue influence on minor
    (U.S.S.G. § 2G1.3(b)(2)(B)            + 2

    Offense involved commission of sex or sexual contact
    (U.S.S.G. § 2G1.3(b)(4)             + 2

Adjustment for Role in the Offense
    Managerial or supervisor (but not organizer or leader)
    (U.S.S. G. § 3B1.1(b))             + 2

          Adjusted Offense Level        36

**Group 4: Victim 7**: (15 years of age)

Base Offense Level:                +30
    (U.S.S.G. § 2G1.3(a)(1)

---

[9] The PSR originally tallied the points at 36, but was corrected by the government's sentencing objection. The PSR corrected the adjusted offense level which did not affect the overall total guideline calculation. (ER IV 2).

Specific Offense Characteristics:
    Undue influence on minor
    (U.S.S.G. § 2G1.3(b)(2)(B))          + 2

    Offense involved commission of sex or sexual contact
    (U.S.S.G. § 2G1.3(b)(4))          + 2

Adjustment for Role in the Offense
    Managerial or supervisor (but not organizer or leader)
    (U.S.S. G. § 3B1.1(b))          + 2

        Adjusted Offense Level        36

**Group 5: Firearm Possession**:

Base Offense Level:        +24
    (U.S.S.G. § 2K2.1)

Specific Offense Characteristics:
    Alter or obliterate serial number
    (U.S.S.G. § 2K2.1(b)(4)(B))          + 2

        Adjusted Offense Level        28

Multiple Count Adjustment (U.S.S.G. Chapter 3, Part D):    Units:

Group 1 Adjusted offense Level……………………………….. 40   1

Group 2 Adjusted offense Level……………………………….. 40[10]  1

Group 3 Adjusted offense Level……………………………….. 36   1

Group 4 Adjusted offense Level……………………………….. 36   1

Group 5 Adjusted offense Level……………………………….. 28   0

Total Number of Units………………………………………….   4

---

[10] Adjusted offense level 40 is the corrected amount.

Highest of the Adjusted Offense Levels Above ……………………………40

     Increase in Offense level (U.S.S.G. § 3D1.4):       + 4

Combined Adjusted Offense level (subtotal)        44

Adjustment for Responsibility   U.S.S.G. § 3E1.1      ( - 2)

   **Total Offense Level             42**

 (ER IV 25-32; PSR ¶s 47 - 95).

     Mr. Bell's criminal history points calculated with 20 points placing him in criminal history category VI.  The PSR also determined that Mr. Bell was a career offender which also placed him in criminal history category VI.  U.S.S.G. 4B1.1(b) ( ER IV 32-37; PSR  ¶s 97-112).   This yielded an advisory guideline range of 360 to life.  (ER IV 39; PSR ¶ 127).  Mr. Bell was also subject to a  statutory mandatory minimum term of imprisonment on Count 3 of 15 years under 18 U.S.C. § 1951 (a)(1), (a)(2), (b)(1).  (ER IV 39; PSR ¶ 126).   The PSR also recited that pursuant to the plea agreement, the parties' stipulated that a sentence of 360 months imprisonment and a lifetime term of supervised release is an appropriate disposition in this case. (ER IV 39; PSR ¶ 128).

**2.**   **Defendant's Sentencing Position**

     In preparation for defendant's sentencing, Mr. Bell submitted for the Court's consideration, Defendant's Position re: Sentencing Factors   Mr. Bell made general objections to the factual findings in the PSR and the criminal history

calculations as well as the career offender guideline determination arguing insufficient evidence to support the convictions.  (ER II 102 ; CR 375)  However, in accordance with his obligations as set forth in the plea agreement, a sentence of 360 months was requested.  (ER II 103; CR 375).

### 3.    Government's Sentencing Positions

The government agreed with the factual findings and the criminal history category VI finding.  But the government disagreed with the PSR's guideline calculations.   The government corrected the PSR's addition error for Victim 4 which was reported at an adjusted offense level 36, but should have totaled an adjusted offense level 40.  The government also noted that while the PSR assessed Mr. Bell as a career offender, because defendant's total offense level of 42 is greater than the career offender base offense level of 37, the career offender determination does not affect defendant's guideline calculation.  (ER II 90-91 ; CR 376).  The government also argued that the 2 level increase should apply for vulnerable victim (§ 3A1.1(b)(1)  to victims 3 (age 17), victim 5 (age 15), and victim 7 (age 17).  (ER II 93-95; CR 376).   The probation office disagreed with application of the 2 levels for vulnerable victim, but also acknowledged that even with an increase, the ultimate total offense level was unchanged.   (ER IV 1; PSR Addendum .  The government recommended a sentence of 360 months'

imprisonment, a lifetime term of supervised release, and a mandatory special assessment of $100. (ER II 100)

**4.  Sentencing Hearing**

At the sentencing hearing on March 31, 2014, the Court considered the presentence report, the addendum, the government's sentencing memorandum filed on March 10th, the defense sentencing memorandum filed on March the 7th, and the Government filed two Victim Impact Statements.  (3/31/2014 RT 5-6  ER I 3-4).

 The Court agreed with the government that the enhancements for vulnerable victims under 3A1.1(b)(1) should apply, but it did not change the offense level. Also, the court noted that "the defense makes a blanket objection to the facts in the criminal history but provides no basis for those objections.  So I would overrule them."  (3/31/2014 RT 7;  ER I 7).

The Court adopted the factual recitations and the Guideline calculations with the enhancements for vulnerable victim, resulting in a guideline range of 360 months to life and a supervised release period of 5 years to life.   The Court also acknowledged the mandatory minimum sentence of 15 years in custody.  The Court accepted the criminal history calculations and category, the finding of career offender, but noting that the total offense level was 42 and higher than the career offender. (3/31/2014 RT 6; ER I 6-8).

The Court noted that a sentence of 30 years was long enough but not longer than necessary to meet the purposes set forth in 3553(a), and the need to avoid sentencing disparity. The court provided its basis for its tentative stating:

> Both sides make the same request. I mean. . . there's an 11(c)(1)(C) plea agreement here calling for a sentence of 30 years. And I would, having reviewed everything, and as I will get to in a moment, considering the 3553(a) factors, accept the plea agreement and sentence the defendant to a custody term of 30 years, a lifetime period of supervised release.

> As I said, the Guideline sentence is 30 years to life, but the Court doesn't presume that's reasonable. So turning to the 3553(a) factors, starting with the nature and circumstances of the offense, the defendant who is a member of the Rollin' Crips gang from at least January 2011 to August of 2011, along with is co-defendants, recruited, employed, and harbored minors for prostitution. This defendant was the most established of the three pimps, and he recruited, managed, et cetera, the victims.

> As to Victims 3, 4, 5, and 7, he did so knowing they were under the age of 18. He recruited victims, placed them at hotels and at his house in Lynwood. He had them walk in areas known for prostitution and solicit clients. He instructed the victims on every aspect of what they were being told or coerced into doing, including how much to charge.

> And if they did not follow -- and how to dress, and so forth. If they did not follow his rules, he physically and violently abused them, including beating them and using pepper spray on them. He directed others, including Samuel Rogers and Gary Rogers, Christopher Weldon, Su Yan and Javiya Brooks to recruit girls, to manage the business, and so forth. The history and characteristics of the defendant, there isn't much information because he chose not to participate in the pretrial -- or excuse me, the probation office's interview.

His half-brother, Christopher Weldon, is a co-defendant in this case. And from the sentencing of Mr. Weldon, the Court's aware that the defendant, I think, in a sense, recruited him into this business.

The seriousness of the offense and the need for the sentence to promote respect for the law and provide just punishment, at least four, five of the victims, as I already said, were under the age of 18. They were vulnerable; some of them living in group homes. One of them, Victim 3, had just had her two children taken away from her. And for a variety of other reasons, they were vulnerable and suffered greatly.

The victim impact letters set forth in moving detail the amount of suffering and pain inflicted on them. And I think it's important for the Court to recognize the courage of the victims in coming forward and working with the Government in the prosecution of this case.

But the need for a sentence long enough to reflect the seriousness of the offense to deter this defendant and others from this type of criminal conduct, and to protect the public -- noting that he is in criminal history Category 6 -- he has two prior convictions for domestic violence related offenses and one also including sexual intercourse with a minor, showing that there is a pattern of this sort of predatory behavior on young girls. (3/31/2014 RT 8-9; ER I 8-9).

The government read a statement provided by Victim 5's mother who also appeared in court and provided a statement. (3/31/2014 RT 11-15; ER I 11-15).

Mr. Bell addressed the court and expressed that the defense did not have all the discovery and that his attorney was forced to be ineffective by making him sign the plea agreement given the time frame, and that it was up to the court to accept the plea. (3/31/2014 RT 15; ER I 15). In response, the government maintained

that it had timely provided the discovery and that at the prior hearing where the defense requested a continuance, the discovery issues had already been addressed in prior hearings before the court. Moreover, the government contended the court had noted that the bulk of the discovery was provided well in advance of trial. And, that the defense attorney concurred at the change of plea that there was sufficient evidence for a conviction based on the factual basis that the defendant agreed to. (3/31/2014 RT 17-18; ER I 17-18).

The defense maintained that there was late discovery as previously asserted in the request for a continuance, and discovery received after that hearing. Mr. Bell was thereafter provided with a letter and copy of the discovery. The letter was reviewed by the district court. Also, defense counsel did not want to argue against Mr. Bell's assertion of ineffective assistance of a counsel.

The Court responded:

> I thought long and hard about whether or not to accept the plea agreement in this case. A plea agreement under Rule 11(c)(1)(C) is very unusual except for cases charging violation of Title 8, United States Code, Section 1326(a), at least in this district.
>
> Noting that the Guideline range calls for a sentence in the range of 30 years to life, that there is a mandatory minimum sentence of 15 years, and as I have described going through the factors set forth in 18 United States Code Section 3553(a), I gave serious consideration to rejecting the plea agreement on the basis that a 30-year sentence was not sufficiently sever to reflect the seriousness of the offenses and the need to protect the public from the defendant.

Mr. Bell, you're a young man, but you managed to rack up 20 criminal history points, which is one and half times as many as would have landed you in the highest criminal history category. And included in the convictions that you have, as I've already mentioned, are convictions for the same sort of terrible crime that you're standing here this morning before the Court for.

You preyed on particularly vulnerable, young girls, and you've managed to wreak havoc on their lives and the lives of their families. So, a 30-year sentence, I finally concluded, is sufficient and no longer than necessary to take into account how serious your crimes are, the need to protect the public, to deter you and others, and so forth.

You'll have a long time, if you wish to, to consider what you have done. (3/31/2014 RT 19-21; ER I 19-21).

The Court then sentenced Mr. Bell to a 360 month custodial term and a life term of supervised release to follow imprisonment. The conditions of supervised release included periodic drug tests, outpatient substance abuse treatment and counseling, and placement in a residential drug treatment program if agreed to by Mr. Bell and defense counsel. Conditions also included 20 hours of community service, possession and use of computer and computer-related devices disclosed to the probation officer and subject to search and seizure, computer monitoring program not to exceed $32 per month per device connected to Internet; search and seizure of person and property, sex offender registration and counseling and treatment, restriction or prohibition for possession of materials depicting sexually explicit or child pornography, prohibition from contacting any of the victims and to stay at least 100 years from the victims at all times; restrictions on

communications with persons under 18 years of age, remain at least 100 years

from places primarily used by persons under 18 years of age, and not to associate

with any Rollin' 60's Crips gang members.   (3/31/2014 RT 21-30; ER I 21-30).

The Court granted the government's motion to dismiss counts 1, 2, 4, 5 and

6 (the remaining counts) of the First Superseding Indictment and the initial

Indictment.  (3/31/2014  RT  31; ER I 31).

The Court also indicated that it did not see any evidence of defense

counsel's ineffectiveness.  (3/31/2014 RT 30; ER I 30).

The Court also advised Mr. Bell of his right to appeal the conviction and

sentence within 14 days of the sentencing hearing. (3/31/2014 RT 29- 31; ERI 29-

39).

## DISCUSSION OF LEGAL ISSUES

**A.    Introduction**

Under *Anders v. California*, 386 U.S. 738, court-appointed appellate counsel

may move to withdraw upon determining that an appeal presents no arguable

issues.  Counsel must, however, compile excerpts of the record and brief all

possible legal issues so that the appellate court may independently assess whether

the appeal is frivolous.  *Id.* at 744-745; *see also United States v. Griffy*, 895 F.2d

561 (9th Cir. 1990).  Pursuant to this duty, counsel has filed the accompanying

excerpts of the record, provided the required appellate information and, in the discussion which follows, addresses specific possible legal issues.

## B.  Conviction

Appellant's conviction is based upon his guilty plea.   The adequacy of a Rule 11 plea colloquy is reviewed de novo. *United States v. Villalobos*, 333 F.3d 1070, 1073 (9th Cir. 2003).  There is nothing in the record indicating that Mr. Bell was not competent to enter a guilty plea or that the plea was not knowingly and voluntarily made. *See* Fed.R.Crim.P. 11; *United States v. Ullyses-Salazar*, 28 F.3d 932, 939 (9th Cir. 1994).

## C.  Pretrial Motions

Pursuant to Federal Rule of Criminal Procedure 11(a)(2),  with the consent of the government, a defendant can enter a conditional plea and  reserve the right to appeal the denial of pretrial motions.  Fed.R.Crim. P. 11(a)(2).

Mr. Bell and the government agreed to a Rule 11(c)(1)(C) plea agreement binding the Court as to the appropriate sentence, but it was not a conditional plea agreement which preserved the right to appeal any of the pretrial motions.   Mr. Bell did not preserve his right to appeal an adverse determination of any or all of the pretrial motions (i.e., continuance motions, in limine motions) and in fact, waived his rights to pursue any pretrial motions that have been filed or could be filed. (ER II 146; CR 345).  *United States v. Lopez-Armenta*, 400 F.3d 1173 (9th

Cir. 2005) ("it is well settled that an unconditional guilty plea constitutes a waiver of the right to appeal all non-jurisdictional antecedent rulings and cures all antecedent constitutional defects.") (internal citations omitted).

**D.    Sentence**

Ordinarily, this Court reviews a sentence to determine if it is unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a).  See *United States v. Booker*, 543 U.S. 220, 260-264 (2005).  Where there is a valid and enforceable waiver of the right to appeal, this Court lacks jurisdiction to entertain any issue covered by the waiver.  Whether a defendant has waived his right to appeal and whether the waiver is valid are reviewed de novo. *United States v. Jeronimo*, 398 F.3d 1149, 1152-53 (9th Cir. 2005).

Here, the parties entered into a Rule 11(c)(1)(C)  plea agreement with an agreed upon sentence of 360 months in custody.  The court accepted the binding plea agreement and imposed a 360 month custodial sentence followed by a life term of supervised release.   The plea agreement also contained a mutual wavier of appeal that should the Court impose the agreed upon sentence, that defendant gave up the right to appeal any sentence imposed by the court.

**E.    Conclusion**

For the foregoing reasons, the Court should grant counsel's request to be relieved and independently review the record.

32

Respectfully submitted,

SAINT MARTIN & FAN
Attorneys At Law

/s / *Amy Fan*

DATED: May 12, 2015          _____

AMY FAN

**Certificate of Related Cases**

Counsel for appellant certifies that he is unaware of any pending case presenting an issue related to those raised in this brief.

Respectfully submitted,

SAINT MARTIN & FAN
Attorneys At Law

/s/ *Amy Fan*

DATED: May 12, 2015 _____

AMY FAN

## Certificate of Compliance

Pursuant to Ninth Circuit Rule 32(e)(3), I certify that this brief is proportionately spaced using 14 point Times New Roman and consists of  7351 words.

Respectfully submitted,

SAINT MARTIN & FAN
Attorneys At Law

/s/ *Amy Fan*

DATED: May 12, 2015    _____

AMY FAN