No: 14-50162

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.C. No: 5:12-CR-0057-VAP |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL EDWARD BELL | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |

———————————————————

EXCERPTS OF RECORD VOLUME I

———————————————————

Appeal from the U.S. District Court, Central District of California

Honorable Virginia A. Phillips
United States District Judge

AMY FAN
Saint Martin & Fan
P O Box 882228
Los Angeles, California 90009
Tel: (310) 645-9383
Fax: (310) 641-2501

Attorneys for Defendant-Appellant

# TABLE OF CONTENTS

Page

**VOLUME I:**

1.  REPORTER'S TRANSCRIPT OF PROCEEDINGS –
    SENTENCING HEARING
    March 31, 2014
    Docket No. 449 ........................................................................ 1-32

2.  REPORTER'S TRANSCRIPT OF PROCEEDINGS –
    CHANGE OF PLEA
    January 14, 2014
    Docket No. 370 ...................................................................... 33-73


**VOLUME II:**

3.  NOTICE OF APPEAL
    Filed on March 31, 2014
    Docket No. 395. ............................................................................74

4.  JUDGMENT AND COMMITMENT ORDER
    Hearing March 31, 2014; Entered April 4, 2014
    Docket No. 415 ...................................................................... 75-82

5.  GOVERNMENT'S SENTENCING POSITION; RESPONSE TO
    PRESENTENCE REPORT
    Filed March 10, 2014
    Docket No. 376 .................................................................. 83-100

6.  DEFENDANT'S SENTENCING POSITION
    Filed on March 7, 2014
    Docket No. 375 ................................................................ 101-105

7.  STIPULATION REGARDING AMENDED PLEA AGREEMENT
    FOR DEFENDANT  PAUL EDWARD BELL
    (AND AMENDED  PLEA AGREEMENT)
    Filed March 17, 2014
    Docket No. 380 ................................................................ 106-130

8.      PLEA AGREEMENT FOR DEFENDANT  PAUL EDWARD BELL
        Filed January 13, 2014
        Docket No. 345 ................................................................. 131-153

9.      REPORTER'S TRANSCRIPT OF PROCEEDINGS –
        HEARING ON DEFENDANT'S FIRST *EX PARTE APPLICATION FOR
        A CONTINUANCE OF THE TRIAL*
        Hearing January 10, 2014
        Docket No. 350 ................................................................. 154-197

10.     REPORTER'S TRANSCRIPT OF PROCEEDINGS –
        HEARING ON MOTIONS
        December 19, 2013
        Docket No. 447 ................................................................. 198-275

11.     COURT MINUTES – ORDER RULING ON THE PARTIES' MOTIONS
        AND PRETRIAL CONFERENCE
        December 19, 2013
        Docket Nos. 318, 320 ....................................................... 276-293

## VOLUME II:

12.     FIRST SUPERSEDING INDICTMENT
        Filed November 20, 2013
        Docket No. 234 ................................................................. 294-307

13.     REPORTER'S TRANSCRIPT OF PROCEEDINGS –
        STATUS CONFERNCE
        Hearings September 30, 2013
        Docket No. 211 ................................................................. 308-321

14.     INDICTMENT
        Filed on August 1, 2012
        Docket No: 1 ..................................................................... 322-342

14.     DISTRICT COURT DOCKET ........................................... 343-392

Case: 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 4 of 76
Case 5:12-cr-00057-VAP  Document 449  Filed 07/13/14  Page 1 of 32  Page ID #:3125

1

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                  EASTERN DIVISION-RIVERSIDE

 4                           - - -

 5        HONORABLE VIRGINIA A. PHILLIPS, JUDGE PRESIDING

 6                           - - -

 7  UNITED STATES OF AMERICA,          )
                                       )
 8                    Plaintiff,       )
                                       )
 9           vs.                       )   No. EDCR 12-57 VAP
                                       )
10  PAUL EDWARD BELL,                  )
                                       )
11                    Defendant.       )
    _____)
12

13

14          REPORTER'S TRANSCRIPT OF SENTENCING PROCEEDINGS

15                    Riverside, California

16                   Monday, March 31, 2014

17                        9:08 a.m.

18

19

20

21            PHYLLIS A. PRESTON, CSR, FCRR
              Federal Official Court Reporter
22            United States District Court
                   3470 Twelfth Street
23            Riverside, California 92501
                    (951) 205-7959
24                  stenojag@aol.com

25
```

Case 1:15-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 5 of 76
Case 5:12-cr-00057-VAP, Document 449 Filed 07/13/12 Page 2 of 32 Page ID #:3126

2

```
 1   APPEARANCES:

 2

 3   For the Plaintiff:

 4                           OFFICE OF THE UNITED STATES ATTORNEY
                             BY:  AMI SHETH
 5                           Assistant United States Attorney
                             3403 Tenth Street, Suite 200
 6                           Riverside, California 92501

 7

 8                           US DEPARTMENT OF JUSTICE
                             CHILD EXPLOITATION AND OBSCENITY SECTION
                             BY:  MICHAEL GRANT
 9                           1400 New York Avenue NW, 6th Floor
                             Washington, DC 20005
10

11

     For Defendant Paul Bell:
12
                             OFFICE OF THE FEDERAL PUBLIC DEFENDER
13                           BY:  JEFFREY AARON
                                  DAVID WASSERMAN
14                           Deputy Federal Public Defenders
                             3801 University Avenue, Suite 150
15                           Riverside, California  92501

16

17

18

19

20

21

22

23

24

25
```

Case 1:14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 6 of 76
Case 5:12-cr-00057-VAP, Document 449 Filed 07/13/14 Page 3 of 32 Page ID #:3127

3

```
 1              MONDAY, MARCH 31, 2014; RIVERSIDE, CALIFORNIA

 2                              -o0o-

 3              THE CLERK:  Calling Item 1, Case No. EDCR 12-057 VAP,

 4    United States of America v. Paul Edward Bell.

 5              Counsel, please state your appearances.                09:08

 6              MS. SHETH:  Good morning, Your Honor.  Ami Sheth on

 7    behalf of the United States.  And with me at counsel table is

 8    Michael Grant from the CS section of DOJ, as well as Special

 9    Agent Klaus Franze with the FBI.

10              THE COURT:  Thank you.  Good morning.                  09:08

11              MR. AARON:  Good morning, Your Honor.  Jeffrey Aaron

12    for the federal public defender for Paul Bell who is present in

13    custody, and David Wasserman of the federal public defender's

14    office is present, as well.

15              THE COURT:  Thank you.  Good morning.                  09:08

16              This matter is on the Court's calendar for

17    sentencing.  Are both sides ready to proceed?

18              MS. SHETH:  Yes, Your Honor, ready to proceed.

19              I believe that there is one additional family member

20    of one of the victims who is parking.  So I believe she wants   09:08

21    to speak today, so she will, I believe, be here in time for

22    that, but I wanted to let the Court know.

23              THE COURT:  All right.

24              MR. AARON:  We're ready to proceed.

25              DEFENDANT BELL:  Your Honor --                         09:09
```

Case 5:12-cr-00057-VAP Document 449 Filed 07/13/15 Page 4 of 32 Page ID #:3128
Case: 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 7 of 76

4

```
 1              THE COURT:  Mr. Bell, you wish to -- if you wish to
 2    address the Court, you're going to definitely have the
 3    opportunity to do that.
 4              DEFENDANT BELL:  All right.
 5              THE COURT:  All right.  But I just need to say a few    09:09
 6    things first.
 7              All right.  The presentence report was disclosed on
 8    February the 24th.  Have you reviewed that with your client?
 9              MR. AARON:  Yes, Your Honor.
10              THE COURT:  Mr. Bell, have you seen the probation      09:09
11    office's report?
12              DEFENDANT BELL:  I don't recall.
13              THE COURT:  Well, Mr. Aaron, could you show Mr. Bell
14    a copy of it and see if that refreshes his recollection as to
15    whether he's seen it?                                           09:09
16              And while Mr. Aaron is doing that, Ms. Sheth, has the
17    Government complied with the requirements of the Crime Victims'
18    Rights Act as to this proceeding?
19              MS. SHETH:  Yes, Your Honor, it has.  There is one
20    family member who is in court right now; there will be another  09:09
21    coming.  And there are two Victim Impact Statements the
22    Government has filed.
23              THE COURT:  I've received those.  Is the family
24    member who is here, does he or she wish to address the Court at
25    the proper time?                                                09:10
```

1          MS. SHETH:  No, but she wishes that I would read out

2     her Victim Impact Statement to the Court at the proper time.

3          THE COURT:  At the proper time.

4          All right.  Mr. Bell, do you have a copy of the

5     probation office's report there?                              09:10

6          DEFENDANT BELL:  Yeah.

7          THE COURT:  Does that refresh your memory that you've

8     seen it before?

9          DEFENDANT BELL:  Yeah.

10          THE COURT:  Have you discussed it with Mr. Aaron or     09:10

11     Mr. Wasserman?

12          DEFENDANT BELL:  We've actually discussing it, so I

13     didn't really -- I didn't waste time discussing that.

14          THE COURT:  All right.  But you had the chance to do

15     that?                                                        09:10

16          DEFENDANT BELL:  Yeah.

17          THE COURT:  He came to talk to you?

18          DEFENDANT BELL:  Yeah.

19          THE COURT:  All right.  In addition to the

20     presentence report, I've reviewed the Government's sentencing  09:10

21     memorandum filed on March the 10th, the defense sentencing

22     memorandum filed on March the 7th, and then the Government

23     filed two Victim Impact Statements, as we've already discussed.

24          Is that everything that both sides have submitted?

25          MS. SHETH:  Yes, Your Honor.                            09:11

```
 1            THE COURT:  Is that correct, Mr. Aaron?

 2            MR. AARON:  Yes, Your Honor.  I'm sorry.  I had to go

 3   get that statement.

 4            THE COURT:  All right.  That's fine.

 5            Does either side have any objections to the          09:11

 6   presentence report, other than what you've raised in your

 7   papers?

 8            MS. SHETH:  No, Your Honor.

 9            MR. AARON:  No, Your Honor.

10            THE COURT:  The Government objected to the initial    09:11

11   supervised release term, and that was corrected in the

12   addendum.  I'm sorry.  I don't think I reflected that there was

13   an addendum.

14            The Government also objects that -- and requests that

15   a two-level upward adjustment should be applied for vulnerable 09:11

16   victims as to Victims 3, 5 and 7, under Guideline Section 3A1.1

17   (b)(1).  And in support of that, the Government points out that

18   Victim 3 was at continuation school at the time that she was

19   recruited to participate in the defendant's prostitution ring.

20   She had no family support.  She was living in a group home     09:12

21   because she was a runaway, and she had just had her children

22   taken away from her.

23            Victim 7 was living in the same group home, and

24   Victim 5 was recruited by co-defendant Alberti after she had

25   had a fight with her mother.                                   09:12
```

1    I agree with the Government that the enhancement

2 under 3A1.1(b)(1) should apply, but it doesn't change the

3 offense level.

4    The defense makes a blanket objection to the facts in

5 the criminal history but provides no basis for those                09:12

6 objections.  So I would overrule them.

7    And I would adopt the factual recitations and the

8 Guideline calculations, noting that there would be the

9 vulnerable victim enhancement, but that doesn't, as I said,

10 make any difference as to the Guideline range or the offense        09:13

11 level.

12    So the Guideline range is 360 months to life, a

13 supervised release period of five years to life, a fine ranging

14 from 25,000 to $250,000.

15    There is a mandatory minimum sentence of 15 years.            09:13

16 And that's based on an offense level of 42, a base offense

17 level of 34, under Guideline Section 1B1.11 and 2G1.3(a)(2).

18    Additional enhancements, as I said, for the

19 vulnerable victim, a leadership role, and the multiple count

20 adjustment, minus two levels for acceptance of responsibility       09:14

21 because the defendant pled on the morning of trial.

22    So the final offense level is 42, and the defendant's

23 criminal history category is 6, which is based on the 2002

24 conviction for assault with a deadly weapon with a likelihood

25 of great bodily injury; a 2006 conviction for reckless driving;    09:14

a 2005 conviction for domestic violence, and sexual intercourse

with a minor; a 2005 conviction for false impersonation to a

police officer; a 2007 conviction for being a felon in

possession of a firearm; a 2008 conviction for domestic

violence; a 2010 conviction for driving under the influence,

reckless driving, and making criminal threats; a 2011

conviction for driving on a suspended license.

So that's 18 points, and two additional points

because he was on parole at the time of this offense.  So

that's 20 points.  So he would be in criminal history

Category 6.  He's a career offender because he has two

predicate violent offenses.  But in any event, he's in criminal

history Category 6.

Both sides make the same request.  I mean, that is --

there's an 11(c)(1)(C) plea agreement here calling for a

sentence of 30 years.  And I would, having reviewed everything,

and as I will get to in a moment, considering the 3553(a)

factors, accept the plea agreement and sentence the defendant

to a custody term of 30 years, a lifetime period of supervised

release.

As I said, the Guideline sentence is 30 years to

life, but the Court doesn't presume that's reasonable.  So

turning to the 3553(a) factors, starting with the nature and

circumstances of the offense, the defendant, who is a member of

the Rollin' Crips gang, from at least January 2011 to August of

 1   2011, along with his co-defendants, recruited, employed, and

 2   harbored minors for prostitution.  This defendant was the most

 3   established of the three pimps, and he recruited, managed, et

 4   cetera, the victims.

 5            As to Victims 3, 4, 5 and 7, he did so knowing that          09:16

 6   they were under the age of 18.  He recruited victims, placed

 7   them at hotels and at his house in Lynwood.  He had them walk

 8   in areas known for prostitution and solicit clients.  He

 9   instructed the victims on every aspect of what they were being

10   told or coerced into doing, including how much to charge.  And     09:17

11   if they did not follow -- and how to dress, and so forth.  If

12   they did not follow his rules, he physically and violently

13   abused them, including beating them and using pepper spray on

14   them.

15            He directed others, including Samuel Rogers and Gary      09:17

16   Rogers, Christopher Weldon, Su Yan and Javiya Brooks to recruit

17   girls, to manage the business, and so forth.

18            The history and characteristics of the defendant,

19   there isn't much information because he chose not to

20   participate in the pretrial -- or excuse me, the probation        09:17

21   office's interview.

22            His half-brother, Christopher Weldon, is a

23   co-defendant in this case.  And from the sentencing of

24   Mr. Weldon, the Court's aware that the defendant, I think, in a

25   sense, recruited him into this business.                          09:17

1    The seriousness of the offense and the need for the

2    sentence to promote respect for the law and provide just

3    punishment, at least four, five of the victims, as I already

4    said, were under the age of 18.  They were vulnerable; some of

5    them living in group homes.  One of them, Victim 3, had just                09:18

6    had her two children taken away from her.  And for a variety of

7    other reasons, they were vulnerable and suffered greatly.

8    The victim impact letters set forth in moving detail

9    the amount of suffering and pain inflicted on them.  And I

10    think it's important for the Court to recognize the courage of              09:18

11    the victims in coming forward and working with the Government

12    in the prosecution of this case.

13    But the need for a sentence long enough to reflect

14    the seriousness of the offense to deter this defendant and

15    others from this type of criminal conduct, and to protect the              09:19

16    public -- noting that he is in criminal history Category 6 --

17    he has two prior convictions for domestic violence related

18    offenses and one also including sexual intercourse with a

19    minor, showing that there is a pattern of this sort of

20    predatory behavior on young girls.                                          09:19

21    A 30-year sentence is long enough but not longer than

22    necessary to meet the purposes set forth in 3553(a), all the

23    ones I described already, and including the need to avoid

24    sentencing disparity.

25    Do you wish to be heard, Ms. Sheth?                                         09:19

1          MS. SHETH:  Yes, Your Honor.

2          At this time, I would like to read a statement that

3   was provided by Victim 5's mother.

4          THE COURT:  Go ahead.

5          MS. SHETH:  Dear Judge Phillips, could you imagine          09:20

6   dropping your 15-year-old daughter off at school, then later

7   that evening coming home after a hard day at work and your

8   family telling you your daughter never came home from school?

9          That was me on February 9th, 2011.

10         My first thought was maybe she was at one of her          09:20

11  friend's house.  I immediately started to call all of her

12  friends.  No one had seen her since school earlier that day.

13  It's getting late now.  I start praying, asking the Lord to

14  watch over my child and bring her home safely.

15         I go to bed that night, still no sign of her.          09:20

16         I get up, go to work, distraught, not knowing where

17  she is.  Days went past.  No sign of her, after looking and

18  calling around for days.  No one knew where she was.

19         I sat in her bedroom day and night, crying and

20  praying for my daughter, asking the Lord to watch over her and   09:21

21  to keep her safe.  I couldn't sleep or eat, not knowing whether

22  my daughter was dead or alive.

23         Then, two weeks later I was at work.  My mom called

24  me and said that my daughter called, asking if we could pick

25  her up.  I left work, rushed home to find my daughter sitting   09:21

```
 1    on the couch, skinny as she could be.  She had lost so much

 2    weight.  She looked sick.  Her hair was matted.  Her clothes

 3    were dirty.  She smelled so bad.  That's the vision I cannot

 4    get out of my head.

 5          Then to find out that she had been out on the                09:21

 6    streets, prostituting, devastating me and my family, never

 7    thinking something like this could happen to our baby.

 8          This has been an ongoing healing process for our

 9    family.  We thank God every day for answering our prayers and

10    bringing her home safely.                                          09:22

11          In making your decision on sentencing, on behalf of

12    my daughter and my family, we would like for you to just put

13    yourself in our shoes and think as if this was your daughter,

14    sister, or grandchild, how you would feel.

15          Give all the defendants the maximum sentencing for          09:22

16    the crime that was committed.

17          I thank you for allowing me to express what we as a

18    family have gone through.  Thank you.

19          THE COURT:  All right.  Thank you.

20          Now, are there any victims or family members present        09:22

21    who wish to speak at this time?  Do you want to check?

22          MS. SHETH:  Yeah, Your Honor, if you don't mind, I

23    would like to check.  I believe she was parking.

24          THE COURT:  All right.

25          MS. SHETH:  If you would give me a few minutes?             09:22
```

000012

```
 1    Thank you.
 2              THE COURT:  Certainly.
 3                   (Brief pause in proceedings.)
 4              MS. SHETH:  Your Honor, we're ready to proceed.
 5              THE COURT:  All right.                           09:26
 6              MS. SHETH:  Your Honor, this is Ms. Taylor.  She is
 7    Victim 5's grandmother.  She would like to say something.
 8              THE COURT:  Good morning.
 9              MS. JAN TAYLOR:  Good morning, Your Honor.
10              THE COURT:  Would you please, first of all, tell us   09:26
11    your name?
12              MS. JAN TAYLOR:  Jan Taylor.
13              THE COURT:  Thank you.  Go ahead.  You may speak.
14              MS. JAN TAYLOR:  Thank you for waiting on me, first
15    of all.                                                    09:26
16              THE COURT:  You're welcome.
17              MS. JAN TAYLOR:  I drove in from San Diego.
18         What I would like to say is that I don't even feel
19    that 30 years, for this individual, is enough because of the
20    trauma, everything that has affected the victims.  My      09:26
21    granddaughter, her personality has changed.  Her -- she is --
22    she is damaged.  She is damaged from this.  And only with the
23    blessing from the Lord will she ever heal.
24         Socially, she doesn't want to do anything because she
25    is so frightened that someone will know what has happened to   09:27
```

```
 1    her.  Another human being, a male human being, that would take
 2    young women's lives is not worth being on the earth and he
 3    should be in prison the rest of his life.  He had no
 4    consideration for family.  He had no consideration for their
 5    children, for those that had children.  He had no consideration          09:27
 6    for anyone but himself and his own greed, by being too lazy to
 7    attend school.  He's not a dumb person.  To attend school, to
 8    get a degree of some sort, or even a trade for him to be able
 9    to care for himself and his family.  He is a disgrace to our
10    race.  He is a disgrace to the community and the human -- and             09:28
11    humans and all.
12          He is not -- I thank God that I was able to come and
13    have a word with you, and I ask once again that you give him
14    the maximum amount that you're able to by the law.
15          Thank you.                                                          09:28
16          THE COURT:  Thank you, Ms. Taylor.  Thank you for
17    making the effort to drive all the way here and to speak.
18          MS. JAN TAYLOR:  Yes, of course.  Yes.
19          THE COURT:  I also just want to say -- I don't know
20    if you were here before when I said it, that, you know, this is          09:29
21    a terrible case, a very, very sad case.  But one of the
22    redeeming things about it is the courage of the victims --
23          MS. JAN TAYLOR:  Yes.
24          THE COURT:  -- to speak, to assist the Government in
25    the prosecution of this case.  And I can't begin to imagine how          09:29
```

1   much courage it took on the part of your granddaughter and the

2   other victims to come forward as they've done. And I think

3   that having that courage is a very good sign of their strength

4   and their ability to have good and productive lives. And

5   that's my sincere wish.                                                    09:29

6           So I hope you will convey that to your granddaughter,

7   my admiration for her courage and my hopes for her recovery.

8           MS. JAN TAYLOR: Thank you very, very much. And God

9   bless you.

10          THE COURT: Thank you.                                             09:30

11          Mr. Aaron.

12          MR. AARON: Thank you, Your Honor.

13          Your Honor, I should note a couple of things. First

14  of all, my client did not interview with probation. He hasn't

15  authorized me to cooperate with the sentencing, other than what   09:30

16  I wrote down in my sentencing memorandum.

17          I should also note that although, unfortunately,

18  there is no evidence in the record of it, the Paul Bell that we

19  heard about in the Government's sentencing memorandum and the

20  letters of the victims is different than the Paul Bell that I      09:30

21  know.

22          I would also point out, Your Honor, that my client

23  does not want to preach.

24          DEFENDANT BELL: Your Honor, I ain't tying to preach,

25  but I talked to my lawyers and they told me that this is when      09:30

```
 1   they got the discovery.  So I asked them later on, Why you all
 2   didn't show me this?
 3              They got it two weeks before the trial.  So I
 4   wondered why he was up here begging not to go and he wasn't
 5   ready.  I wasn't aware of how much that he didn't see.         09:31
 6              The way the Government put the discovery to him was
 7   no way it was a fair trial.  And, of course, he's going to be
 8   scared.  But if the evidence will show that the Government even
 9   know, it ain't what they tryin' to make it seem on me, you
10   know?                                                          09:31
11              My little brother got found guilty.  He had to plead
12   guilty to really he didn't even do nothing.  He didn't do
13   nothing.  The Chinese girl, she was -- the Government even know
14   that she wasn't no -- she was nothing.  The Government know the
15   truth, and they don't -- they tried to hide it from my lawyer. 09:31
16              The Government didn't even allow the truth to come
17   out because it would have been maybe a reduction in my -- maybe
18   people wouldn't even look at me like this if they knew the
19   truth.
20              I think that if the Government for this case, all the 09:31
21   evidence in court, in trial, and you had a right to sentence me
22   to what you feel I deserve for the crime, you know?
23              Now, I'm aware of the max.  I've discussed it with my
24   lawyer, you know.  He haven't really went over the discovery
25   because he's thinking that it's not really good to chance it.  09:32
```

```
 1   And the way he did the discovery is just -- the 27th -- on the
 2   11th, I signed the deal.  It's like, the way he did is all
 3   jumping up one page is here and then another, and it's like
 4   it's not fair, you know?
 5          So I mean, you got to accept the plea.  Cool.  But I    09:32
 6   think that my lawyer ain't a bad lawyer, but he was forced to
 7   be ineffective by making me sign this deal with the time frame
 8   that was given.  It's up to you if you want to accept the plea.
 9          THE COURT:  All right.  Does defense counsel have
10   anything further to argue?                                     09:33
11          MR. AARON:  No, Your Honor.
12          THE COURT:  Ms. Sheth?
13          MS. SHETH:  Nothing further, Your Honor.
14          THE COURT:  Any legal cause why sentence should not
15   now be imposed?                                                09:33
16          MS. SHETH:  No, Your Honor.
17          MR. AARON:  None except for those otherwise stated.
18          THE COURT:  All right.  Well, I have carefully
19   considered all of the factors set forth --
20          MS. SHETH:  Your Honor, if you'll just give me one      09:33
21   moment?
22          THE COURT:  Certainly.
23              (Counsel confer off the record.)
24          MS. SHETH:  Your Honor, briefly, for the record.
25          The Government maintains that it provided discovery     09:34
```

Case 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 21 of 76
Case 5:12-cr-00057-VAP, Document 449, Filed 07/13/14, Page 38 of 92, PageID #:3142

18

1   sufficiently in advance and that there was no record made with

2   respect to not receiving inefficient discovery or ineffective

3   assistance of counsel.

4          The discovery in this case, as we -- as the Court

5   well knows, based on the request to continue the trial date a      09:34

6   few weeks prior to trial, that we sat down and hashed out when

7   all the discovery was provided, and the Court noted that the

8   bulk of it was provided well in advance of trial.  There was

9   more than enough evidence, as defense counsel concurred during

10  the change of plea, for this defendant to be found guilty based   09:34

11  on the factual basis that he in fact admitted to.

12         The Court, in that hearing, I believe, found that

13  there was no discovery violation based on the evidence that was

14  presented to the Court.

15         THE COURT:  All right.                                      09:35

16         MR. AARON:  Your Honor --

17         THE COURT:  Yes.

18         MR. AARON:  I'm sorry.  Mr. Bell, I wrote him a

19  letter.  There was a discovery production -- there were

20  discovery productions late, which were the subject of my ex       09:35

21  parte, which the Court's already ruled on.  There were

22  discovery productions after that.  I provided Mr. Bell a letter

23  of all, I believe, of the discovery productions, and he wanted

24  me to show that letter to the Court.

25         THE COURT:  Fine.  You may submit that.                     09:35

Case 5:12-cr-00057-VAP Document 449 Filed 07/13/14 Page 19 of 92 Page ID #:3143
Case 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 22 of 76

19

1    MS. SHETH:  Your Honor, may I have a copy of that

2    letter, as well?

3    THE COURT:  It would be attorney-client -- although,

4    you're waiving the attorney/client privilege if you show it to

5    the Court.                                                                09:35

6    MR. AARON:  I have no objection to the Government

7    receiving a copy.

8    May I approach, Your Honor?

9    THE COURT:  Yes, you may.

10   All right.  You may return that to counsel for            09:36

11   Mr. Bell.

12   Is there any legal cause why judgment should not now

13   be imposed?

14   MS. SHETH:  No, Your Honor.

15   MR. AARON:  Not as otherwise discussed at the              09:36

16   hearing.

17   THE COURT:  Well, what was that?

18   MR. AARON:  Well, given Mr. Bell's comments, Your

19   Honor, I don't want to say anything that would undercut his

20   objections, particularly when he mentions ineffective        09:37

21   assistance.  I can't advocate my competence.

22   THE COURT:  All right.  Well, I understand that.  All

23   right.

24   I thought long and hard about whether or not to

25   accept the plea agreement in this case.  A plea agreement under   09:37

1  Rule 11(c)(1)(C) is very unusual except for cases charging

2  violation of Title 8, United States Code, Section 1326(a), at

3  least in this district.

4       Noting that the Guideline range here calls for a

5  sentence in the range of 30 years to life, that there is a          09:38

6  mandatory minimum sentence of 15 years, and as I have described

7  going through the factors set forth at 18, United States Code,

8  Section 3553(a), I gave serious consideration to rejecting the

9  plea agreement on the basis that a 30-year sentence was not

10  sufficiently severe to reflect the seriousness of the offenses     09:38

11  and the need to protect the public from the defendant.

12       Mr. Bell, you're a young man, but you have managed to

13  rack up 20 criminal history points, which is one and a half

14  times as many as would have landed you in the highest criminal

15  history category.  And included in the convictions that you        09:39

16  have, as I've already mentioned, are convictions for the same

17  sort of terrible crime that you're standing here this morning

18  before the Court for.

19       You preyed on particularly vulnerable, young girls,

20  and you've manage to wreak havoc on their lives and the lives      09:39

21  of their families.  So a 30-year sentence, I finally concluded,

22  is sufficient and no longer than necessary to take into account

23  how serious your crimes are, the need to protect the public, to

24  deter you and others, and so forth.

25       You'll have a long time, if you wish to, to consider          09:40

 1   what you've done.

 2           DEFENDANT BELL:  I will, Your Honor.

 3           THE COURT:  From everything that you've exhibited

 4   before the Court, I have my doubts as to whether you really

 5   accepted responsibility and whether you will reflect on the          09:40

 6   harm that you've done to others.  But you'll certainly have

 7   several decades to do that, should you choose to do so.

 8           But primarily sadly enough, the purpose of a 30-year

 9   sentence in your case is to protect the public and to reflect

10   how serious this crime is.                                           09:40

11           And again, I just want to commend the victims who

12   exhibited courage in assisting the Government to prosecute this

13   case.

14           So the Court, having considered the factors set forth

15   at 18, United States Code, Section 3553(a), including the            09:41

16   advisory sentencing guidelines, hereby imposes sentence as

17   follows:

18           It's ordered the defendant shall pay to the United

19   States a special assessment of $100, due immediately.  Any

20   unpaid balance shall be due during the period of imprisonment        09:41

21   at the rate of not less than $25 per quarter, pursuant to the

22   Bureau of Prisons Inmate Financial Responsibility Program.

23           Pursuant to Guideline Section 5E1.2(a), all fines are

24   waived, as the Court finds the defendant is unable to pay a

25   fine.                                                                09:41

1       Pursuant to the Sentencing Reform Act of 1984, it is

2  the judgment of the Court that the defendant, Paul Edward Bell,

3  is hereby committed, on Count 1 of the First Superseding

4  Indictment, to the custody of the Bureau of Prisons, for a term

5  of 360 months.                                                            09:42

6       Upon release from imprisonment, he shall be placed on

7  supervised release for a term of life under the following terms

8  and conditions:

9       He shall comply with the rules and regulations of the

10  U.S. Probation Office and General Order 05-02;                           09:42

11       During the period of supervision, he is to pay the

12  special assessment in accordance with this judgment's orders

13  regarding such payment;

14       He shall cooperate in the collection of a DNA sample

15  from the defendant;                                                      09:42

16       The defendant shall refrain from any unlawful use of

17  a controlled substance and submit to one drug test within

18  15 days of release from imprisonment and at least two periodic

19  drug tests thereafter, not to exceed eight tests per month, as

20  directed by probation;                                                   09:42

21       He shall participate in an outpatient substance abuse

22  treatment and counseling program that includes urinalysis,

23  breath and sweat patch testing, as directed by the probation

24  officer, and abstain from using illicit drugs, alcohol, and

25  abusing prescription medications during the period of                    09:43

 1  supervision;

 2          During the course of supervision, the probation

 3  officer, with the agreement of the defendant and defense

 4  counsel, may place the defendant in a residential drug

 5  treatment program approved by the U.S. Probation Office for          09:43

 6  treatment of narcotic addiction or drug dependency, which may

 7  include counseling and testing to determine if the defendant

 8  has reverted to the use of drugs, and the defendant shall live

 9  in the treatment program until discharged by the program

10  director and the probation officer;          09:43

11          As directed by the probation officer, the defendant

12  shall pay all or part of the costs of treating the defendant's

13  substance abuse and mental health treatment to the aftercare

14  contractor during the period of supervision, under 18 U.S.C.

15  Section 3672.  He shall provide payment and proof of payment as          09:43

16  directed by probation;

17          When not employed or excused by the probation officer

18  for schooling, training, or other acceptable reasons, he shall

19  perform 20 hours of community service per week as directed by

20  probation;          09:44

21          The defendant shall possess and use only those

22  computers and computer-related devices, screen user names,

23  passwords, email accounts, and Internet Service Providers which

24  have been disclosed to the probation officer at the

25  commencement of the term of supervision.  Any changes or          09:44

1  additions are to be disclosed to the probation office before

2  the first use.  Computers and computer-related devices include

3  personal computers, personal data assistance, Internet

4  appliances, electronic games, cellular telephones, and digital

5  storage media, as well as their peripheral equipment, that can                    09:44

6  access, or be modified to access, the Internet, electronic

7  bulletin boards, and other computers;

8          All computers, computer-related devices, and their

9  peripheral equipment used by the defendant shall be subject to

10  search and seizure.  This shall not apply to items used at his                    09:45

11  employer's worksite, which are maintained and monitored by his

12  employer;

13          The defendant shall comply with the rules and

14  regulations of the Computer Monitoring Program and pay the cost

15  of the Computer Monitoring Program in an amount not to exceed                     09:45

16  $32 per month per device connected to the Internet;

17          The defendant shall submit his person and any

18  property, house, residence, vehicle, papers, computer, other

19  electronic communication, or data storage devices or media, and

20  his effects to search at any time with or without warrant by                     09:45

21  any law enforcement or probation officer with reasonable

22  suspicion concerning a violation of the condition of probation

23  or supervised release or unlawful conduct by the defendant, and

24  by any probation officer in the unlawful discharge of the

25  officer's supervision function;                                                   09:45

1    The defendant shall register with the state sex

2  offender registration agency in any state where he lives,

3  resides, is employed, carries on a vocation, or is a student,

4  as directed by the probation officer.  He shall provide proof

5  of registration to the probation officer within three days of          09:46

6  release from imprisonment;

7    He shall participate in a psychological counseling or

8  psychiatric treatment or sex offender treatment program as

9  approved and directed by the probation officer, and abide by

10  all rules, requirements, and conditions of such program;               09:46

11    As directed by the probation officer, he shall pay

12  all or part of the costs of treating his psychological/

13  psychiatric disorder to the aftercare contractor during the

14  period of supervision, under 18, U.S.C., Section 3672, and

15  provide payment and proof of payment as directed by probation;         09:46

16    He shall not view or possess any materials, including

17  pictures, photographs, books, writings, drawings, videos, or

18  video games depicting or describing "sexually explicit

19  conduct," as defined at 18, U.S.C., Section 2256 Subparagraph

20  2;                                                                      09:47

21    He shall not view or possess any materials, including

22  pictures, photographs, books, writings, drawings, videos, or

23  video games depicting or describing child pornography, as

24  defined at 18, U.S.C., Section 2256 of Paragraph 8.  This

25  condition doesn't prohibit the defendant from possessing               09:47

1   materials solely because they are necessary to and used for a

2   collateral attack on his conviction, nor does it prohibit him

3   from possessing materials prepared and used for the purposes of

4   his court-mandated sex offender treatment, when the defendant's

5   treatment provider or the probation officer has approved of his          09:47

6   possession of such materials in advance;

7           The defendant shall not contact the victims by any

8   means, including in person, by mail, or electronic means, or

9   via third parties.  The defendant shall remain at least

10  100 yards from the victims at all times.  If any contact          09:48

11  occurs, the defendant shall immediately leave the area of

12  contact and report the contact to the probation officer;

13          The defendant shall not associate or have verbal,

14  written, telephonic, or electronic communication with any

15  person under the age of 18, except: (a) in the presence of the          09:48

16  parent or legal guardian of said minor; and (b) on the

17  condition that the defendant notify said parent or legal

18  guardian of his conviction in the instant offense.  This

19  provision does not encompass persons under the age of 18, such

20  as waiters, cashiers, ticket vendors, etc., with whom the          09:48

21  defendant must deal in order to obtain ordinary and usual

22  commercial services;

23          The defendant shall not frequent or loiter within

24  100 feet of school yards, parks, public swimming pools,

25  playgrounds, youth centers, video arcades, facilities, or other          09:48

1  places primarily used by persons under the age of 18, unless

2  the defendant receives written permission from the probation

3  officer;

4        The defendant shall not affiliate with, own, control,

5  volunteer, or be employed in any capacity by a business or        09:49

6  organization that causes him to regularly contact persons under

7  the age of 18;

8        The defendant shall not affiliate with, own, control,

9  or be employed in any capacity by a business whose principal

10 product is the production or selling of materials depicting or    09:49

11 describing sexually explicit conduct, as defined at 18, U.S.C.,

12 Section 2256 Subparagraph 2;

13       The defendant shall not own, use, or have access to

14 the services of any commercial mail receiving agency, nor shall

15 he open or maintain a post office box without the prior written   09:49

16 approval of the probation officer;

17       The defendant's employment shall be approved by the

18 probation officer, and any change in employment must be

19 pre-approved by the probation officer.  He shall submit the

20 name and address of any proposed employer to probation at least   09:49

21 10 days before any scheduled change;

22       The defendant shall not associate with anyone known

23 to him to be a Rollin' 60s Crips gang member and others known

24 to him to be participants in the Rollin' 60s Crips gang's

25 criminal activity, with the exception of his family members.      09:50

000027

 1   He may not wear, display, use or possess any gang insignias,

 2   emblems, badges, buttons, hats, caps, jacket, shoes, or other

 3   clothing that the defendant knows evidence affiliation with the

 4   Rollin' 60s Crips gangs, and he may not display any signs or

 5   gestures that he knows evidence affiliation with the Rollin'          09:50

 6   60s Crips gang;

 7           As directed by probation, he shall be not be present

 8   in any area known to him to be a location where members of the

 9   Rollin' 60s Crips gang meet or assemble.

10           The Court authorizes the probation office to disclose        09:50

11   the Presentence Investigation Report to the substance abuse

12   treatment provider to assist in the defendant's treatment for a

13   narcotic addiction or drug dependency, but any further

14   redisclosure of the PSR by the treatment provider is prohibited

15   without the consent of the sentencing judge.                         09:51

16           The Court also authorizes the probation officer to

17   disclose the PSR, and any previous mental health evaluations or

18   reports, to the sex offender treatment provider who may provide

19   information excluding the PSR to state or local social service

20   agencies for the purpose of the client's rehabilitation.             09:51

21           MS. SHETH:  Your Honor, I apologize.  I believe that

22   the defendant pleaded guilty to Count 3 of the First

23   Superseding Indictment, not Count 1.

24           THE COURT:  Oh, I apologize.  That should be

25   corrected.                                                           09:51

Case 5:12-cr-00057-VAP Document 449 Filed 07/13/14 Page 29 of 92 Page ID #:3153
Case 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 32 of 76

29

1        All right.  Conditions 4 through 7 regarding drug

2   treatment testing, and so forth, are imposed based on the

3   defendant's prior conviction for driving under the influence,

4   and because there is no reliable information for the Court to

5   indicate a low risk of future substance abuse.                  09:52

6        Conditions 9 through 24, the computer-related terms,

7   the search term, and the sex offender registration term, the

8   terms regarding access to sexually explicit materials, and the

9   contact with victims and minors, are imposed to address the

10  nature and circumstances of this offense, that is, the offense  09:52

11  involving a sex crime.  And, of course, these conditions were

12  agreed upon by the parties in the plea agreement.  But the

13  Court has independently determined that they are necessary and

14  appropriate.

15       Conditions 25 and 26, restricting gang activity and      09:52

16  affiliation, are imposed to protect the public from future

17  crimes, given the defendant's past documented gang activity.

18       And in this case, there was evidence in the record

19  that the defendant, while given his activities during --

20  involving at least one of the victims, made his gang           09:53

21  affiliation part of his coercion and threats imposed upon the

22  victim.

23       Mr. Bell, by pleading guilty, and under the terms of

24  the plea agreement that you signed in this case, you've given

25  up almost all of your rights to appeal your conviction and your  09:53

Case 5:12-cr-00057-VAP Document 449 Filed 07/13/14 Page 30 of 92 PageID #:3154
Case 14-50162, 05/12/2015, ID: 9535156, DktEntry: 15-3, Page 33 of 76

30

 1  sentence.  I'm still required to inform you that a defendant

 2  may file a Notice of Appeal with the clerk of court; that while

 3  doing so, he may ask that he be allowed to file the Notice of

 4  Appeal without paying the usual fee that's required.  And any

 5  Notice of Appeal has to be filed within 14 days, or two weeks,         09:53

 6  from today's date.

 7              Do you understand?

 8              DEFENDANT BELL:  I don't see why -- why you can just

 9  not let it go through because you know that I'm saying my

10  lawyer was ineffective.  I really --                                   09:54

11              THE COURT:  Because I have seen no evidence of that.

12  You have a very fine lawyer, and he --

13              DEFENDANT BELL:  He was forced to be ineffective,

14  though.

15              THE COURT:  Sir, you can take that up at the proper        09:54

16  time.

17              Do you understand what I just told you about your

18  appeal rights?

19              DEFENDANT BELL:  No.

20              THE COURT:  You don't?  You want me to repeat it?         09:54

21              DEFENDANT BELL:  Yeah.

22              THE COURT:  Certainly.

23              By pleading guilty, and under the terms of the plea

24  agreement that you signed, you've given up almost all of your

25  rights to file an appeal of your conviction and your sentence.        09:54

```
 1              Do you understand that?

 2              DEFENDANT BELL:  Yeah.

 3              THE COURT:  I am still required to tell you that you

 4  may file a Notice of Appeal with the clerk of court; that when

 5  you file it, you may ask that you be allowed to file it without      09:54

 6  paying the fee that's usually required, and any Notice of

 7  Appeal has to be filed within 14 days from today's date.

 8              Anything further from either side?

 9              MS. SHETH:  Your Honor, the Government moves to

10  dismiss the remaining counts of the First Superseding                09:55

11  Indictment, as well as the initial Indictment against this

12  defendant.

13              THE COURT:  That's Counts 1, 2, 4, 5 and 6.

14              MS. SHETH:  I believe that's right, Your Honor.

15              THE COURT:  In the First Superseding Indictment.  All    09:55

16  right.  It is so ordered.

17              MS. SHETH:  Yes, that's right.  Thank you.

18              THE COURT:  Thank you.

19                      (Proceedings Concluded)

20                              -o0o-

21

22

23

24

25
```

C E R T I F I C A T E

DOCKET NO. EDCR 12-57 VAP

          I hereby certify that pursuant to Section 753,
Title 28, United States Code, the foregoing is a true and
accurate transcript of the stenographically reported
proceedings held in the above-entitled matter and that the
transcript page format is in conformance with the regulations
of the Judicial Conference of the United States.

 /S/ Phyllis A. Preston        DATED:  June 30, 2014

Federal Official Court Reporter

CSR, FCRR

1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION**

3     **HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE**

4

5  UNITED STATES OF AMERICA,       )
                                  )

6               **Plaintiff,**     )
                                  )

7      vs.                 )     **Case No.**
                                 )  **ED CR 12-00057 VAP**

8  PAUL EDWARD BELL,            )
                                  )

9             **Defendant.**    )
                                  )

10

11             **REPORTER'S TRANSCRIPT OF**
                 **CHANGE OF PLEA**

12        **TUESDAY, JANUARY 14, 2014**
                   **9:41 A.M.**

13          **RIVERSIDE, CALIFORNIA**

14

15

16

17

18

19

20

21

22  _____
         **MYRA L. PONCE, CSR 11544, RMR, CRR**

23        FEDERAL OFFICIAL COURT REPORTER
        312 NORTH SPRING STREET, ROOM 430

24        LOS ANGELES, CALIFORNIA  90012
             (213) 894-2305

25

1                   **APPEARANCES OF COUNSEL:**

2

3   **FOR THE PLAINTIFF:**

4      ANDRE BIROTTE, JR.
        United States Attorney
5      BY:  AMI SHETH
            Assistant United States Attorney
6      3403 Tenth Street, Suite 200
        Riverside, California  92501
7

      UNITED STATES DEPARTMENT OF JUSTICE
8      BY:  MICHAEL W. GRANT
            Assistant United States Attorney
9      1400 New York Avenue NW, Sixth Floor
        Washington, DC  20005
10

11

12  **FOR THE DEFENDANT:**

13     SEAN K. KENNEDY
       Federal Public Defender
14     BY:  JEFFREY A. AARON
      BY:  DAVID ISRAEL WASSERMAN
15         Deputy Federal Public Defenders
       3801 University Avenue, Suite 700
16     Riverside, California  92501

17

18

19

20

21

22

23

24

25

3

1     RIVERSIDE, CALIFORNIA; TUESDAY, JANUARY 14, 2014

2                      9:41 A.M.

3                       -oOo-

4          THE COURTROOM DEPUTY:  Item No. 1, ED CR 12-057 VAP,

5   United States of America versus Paul Edward Bell.

6        Counsel, please state your appearances.

7          MS. SHETH:  Good morning, Your Honor.  Ami Sheth and

8   Michael Grant for the United States.

9          THE COURT:  Good morning.

10         MR. AARON:  Good morning, Your Honor.  Jeffrey Aaron

11  for the Federal Public Defender for Paul Edward Bell.  He's

12  present in custody.

13         MR. WASERMAN:  Good morning, Your Honor.

14  David Wasserman for Mr. Bell.

15         THE COURT:  Thank you.  Good morning.

16       All right.  This morning was the date on which trial was

17  scheduled to begin.  And we had a jury -- larger than usual

18  jury panel scheduled to arrive this morning.  I just reviewed

19  the proposed plea agreement which constitutes what would be a

20  binding plea agreement under Rule 11(c)(1)(C).

21       But as I've informed the parties, I -- my policy is that I

22  will not accept a plea pursuant to a plea agreement less than

23  one week before trial.  And the trial was supposed to start

24  last week.  So at the very latest -- I should have been

25  notified of the plea agreement at the very latest a week ago.

 1      So Ms. Sheth or Mr. Aaron, which one of you wants to

 2  explain to me the tardiness of the plea agreement?  Or maybe

 3  both of you?

 4          MS. SHETH:  Your Honor, I'm happy to begin.

 5      This is -- this is an unusual case in that there were many

 6  considerations in plea negotiations and in preparing for trial.

 7  As the Court is aware, seven of the eight defendants have pled

 8  guilty and the last one that pled guilty changed the nature of

 9  some of what we expected to see at trial.  And that happened

10  about, I think, on December 26th.

11      So while the parties had made -- I think throughout

12  this -- the case has been indicted and discovery has been

13  provided, the parties had made concerted efforts -- I believe

14  both sides made good faith efforts to negotiate.  However,

15  given the fact that the defendant is looking at potentially

16  serving a life sentence and a significant mandatory minimum,

17  there were points where it was -- negotiations would come to a

18  standstill because of the differences between the parties.  But

19  we tried as much as we can to work together.

20      When we knew of the Court's deadline, we tried as hard as

21  we could to reach a plea before the Court's deadline.  And

22  there was some possibility and talk of that, as I believe the

23  Court is aware, closer to the Court's deadline.  And --

24          THE COURT:  I believe the parties were here last

25  Monday, a week ago yesterday, because I believe it was on

```
 1    calendar for a partial plea at that time.
 2               MS. SHETH:  Yes, Your Honor.  And in any other case,
 3    I don't believe the Government would have even proposed a plea
 4    agreement or agreed to one so late in the game.  However,
 5    truthfully, the Government's consideration are the victims and
 6    the -- and the various family members of the victims that would
 7    pay a significant toll and potentially be re-victimized by
 8    taking the stand.  And that's why the Government continued to
 9    negotiate.
10               THE COURT:  All right.  Mr. Aaron, do you have
11    anything to add?
12               MR. AARON:  Everything that the prosecutor said from
13    the -- at least from the defense knowledge is correct.  We did
14    get a new plea offer yesterday for the first time, which is the
15    plea before the Court.
16               MS. SHETH:  Your Honor, that's not accurate.
17    That -- that plea offer was discussed on Friday.  It wasn't
18    discussed for the first time yesterday.  And the numbers that
19    were being discussed were in the range of that before that, as
20    well --
21               THE COURT:  Well, anyway, either Friday or
22    yesterday.
23               MR. AARON:  Your Honor, I must be confused.  I don't
24    recall that conversation Friday, but it's possible that -- that
25    I'm confused.  I thought that there was a different --
```

```
1              THE COURT:  Was it Friday that you all were here?

2              MR. AARON:  We were here Monday and Friday.  Monday

3   regarding the plea and Friday --

4              THE COURT:  Right.  A week ago yesterday.  But you

5   were also -- were you also here last Friday?

6              MS. SHETH:  That's correct.

7              MR. AARON:  Correct.

8              THE COURT:  Is that the right date?

9              MR. AARON:  Correct.  That was regarding the

10  ex parte.

11             THE COURT:  All right.

12             MR. WASERMAN:  I might be able to shine some light

13  on the subject.  I spent a considerable amount of time with

14  Mr. Bell on Thursday and as well as a considerable amount of

15  time with Mr. Bell on Saturday at the jail.  I had a discussion

16  with Mr. Grant on Thursday evening wherein there were some plea

17  negotiations discussed.

18       However, it was my understanding -- and I understand there

19  was clearly just a misunderstanding between the parties -- that

20  there was not a new offer on the table but that there was

21  simply a remark of potentially a 30-year agreement.  But there

22  was no official offer, at least that's how I understood it.

23       I can understand if the Government thinks that they did on

24  Thursday night give a new offer, but I didn't understand that.

25             THE COURT:  All right.  I'm -- I'm satisfied that
```

```
 1    everybody has worked -- my greatest concern, as I think you're

 2    all aware, is that we -- this jury panel, which is now

 3    scheduled to come in tomorrow, we -- it was a lot of extra

 4    work, of course, to notify them last night that they weren't

 5    needed for today.  And anytime we do that with a jury, it

 6    really decreases their respect for the -- for the system and

 7    maybe their willingness to respond to a summons next time.

 8         But I -- I'm persuaded by everything that's been

 9    disclosed, but this is an unusual case and there's good cause

10    to make an exception.  So I'm ready to proceed, then.

11         Mr. Bell, if you would join your lawyer at the lectern.

12    I'm going to start by -- I'm going to start by asking the

13    courtroom clerk to swear you in as a witness so all of your

14    answers to my questions will be under penalty of perjury.  If

15    you answer any of them untruthfully or falsely, you could later

16    be prosecuted for the separate crime of perjury.  Do you

17    understand what that means?

18              THE DEFENDANT:  Yeah.

19              THE COURT:  All right.  If you can't hear any of my

20    questions or if you don't understand any of them, please let me

21    know.  I'll be happy to reword the question.  If you need time

22    to talk to your lawyers before we go any further at any point,

23    let me know and you'll have the opportunity to talk to them.

24    All right?

25         Go ahead.
```

```
 1              THE COURTROOM DEPUTY:  Please raise your right hand.
 2              (Telephonic interruption.)
 3              THE COURT:  All right.  Everybody needs to check
 4    their cell phones and make sure that their cell phones are
 5    turned off.  Thank you.
 6              THE COURTROOM DEPUTY:  Do you solemnly swear that
 7    the answers you give to the Court's questions will be the
 8    truth, the whole truth, and nothing but the truth, so help you
 9    God?  Or do you affirm?
10              THE DEFENDANT:  I'm not signing.  I apologize.  I
11    made a mistake.  I'm not -- I'm not going to sign.  I don't
12    want to plead.
13              THE COURT:  You don't want to go ahead with the
14    plea?
15              THE DEFENDANT:  No.
16              THE COURT:  All right.  You've already signed the
17    plea agreement.  But you don't want to go ahead with the plea?
18              THE DEFENDANT:  I want -- I want more time, but I
19    figured I'm just going with what I got.  I apologize.  I didn't
20    mean to disrespect the Court.
21              THE COURT:  Well, you have caused a great deal --
22              THE DEFENDANT:  I apologize.
23              THE COURT:  Well, apologies are pretty meaningless,
24    Mr. Bell.
25        You have the right to go to trial.  I'm going to take a
```

```
 1    recess and let you discuss your decision with your lawyer.  If

 2    you decide that that's what you want to do, then that is what

 3    we'll do.

 4         All right.  We'll be in recess for 15 minutes.

 5              (Break taken.)

 6              THE COURT:  All right.  We're back on the record

 7    with all parties, all counsel and the defendant present.

 8         How do the parties want to proceed at this time?

 9              MR. AARON:  I believe he's going to plead,

10    Your Honor.

11              THE COURT:  All right.  I'm going to ask the

12    courtroom clerk to swear you in as a witness.  Please raise

13    your right hand.

14              THE COURTROOM DEPUTY:  Do you solemnly swear that

15    the answers you give to the Court's questions shall be the

16    truth, the whole truth, and nothing but the truth, so help you

17    God?

18              THE DEFENDANT:  Yes.

19              THE COURTROOM DEPUTY:  Is Paul Edward Bell your true

20    and correct name?

21              THE DEFENDANT:  Yes, ma'am.

22              THE COURTROOM DEPUTY:  At this time do you wish to

23    withdraw or take back your earlier entered plea of not guilty

24    to Count 3 of the First Superseding Indictment?

25              THE DEFENDANT:  Yes, ma'am.
```

```
1          THE COURTROOM DEPUTY:  How do you intend to plead to

2   Count 3 of the First Superseding Indictment?  Guilty or not

3   guilty?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  All right.  As I said earlier, Mr. Bell,

6   if you can't hear me or if you don't understand any of my

7   questions, let me know, and I'll repeat the question for you or

8   reword it.  And if you need time to discuss something with your

9   lawyer, let me know, and you'll have the opportunity to talk to

10  him -- or them.

11      All right.  I understand that you signed a written plea

12  agreement that was negotiated by your lawyers on your behalf.

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  And you're here because you now want to

15  withdraw your earlier plea of not guilty as to --

16      I think this is Count 3; correct?

17         MR. AARON:  Correct.

18         THE COURT:  -- to the First Superseding Indictment

19  in order to enter a plea of guilty.  Is that correct?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  Mr. Aaron, the plea agreement shows it

22  was signed by you and your client on January 13th.  Did he sign

23  the plea agreement in your presence?

24         MR. AARON:  Yes, Your Honor.

25         THE COURT:  Did you discuss all of the contents of
```

```
 1   the plea agreement with him before he signed it?

 2              MR. AARON:  Yes, Your Honor.

 3              THE COURT:  Does the plea agreement represent the

 4   entire disposition of this case so far as you and your client

 5   and the U.S. Attorney's Office are concerned?

 6              MR. AARON:  Yes, Your Honor.

 7              THE COURT:  Apart from what's in the written plea

 8   agreement, has the Government made any promises,

 9   representations, or guarantees to either you or your client?

10              MR. AARON:  No, Your Honor.

11              THE COURT:  All right.  Mr. Bell, was your lawyer

12   with you when you signed the plea agreement?

13              THE DEFENDANT:  Yes, ma'am.

14              THE COURT:  Did you discuss everything in the plea

15   agreement with your lawyers before you signed it?

16              THE DEFENDANT:  Yes, ma'am.

17              THE COURT:  Did you have a chance to ask your lawyer

18   all of your questions about the plea agreement before you

19   signed it?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Did your lawyer answer your questions

22   for you to your satisfaction?

23              THE DEFENDANT:  Yes, ma'am.

24              THE COURT:  Does the plea agreement cover everything

25   that you've been told about what's happening in your case?
```

```
 1            THE DEFENDANT:  Yes.

 2            THE COURT:  All right.  Has anyone promised you

 3   anything or made you any guarantees about your case or told you

 4   anything about your case other than what's in the plea

 5   agreement?

 6            THE DEFENDANT:  No, ma'am.

 7            THE COURT:  All right.  Thank you.

 8        And, Ms. Sheth, is this the written plea agreement that

 9   the Government extended to the defendant and his lawyer?

10            MS. SHETH:  Yes, Your Honor.

11            THE COURT:  Other than what's contained in the

12   written plea agreement, has the Government made any other

13   promises, representations, or guarantees to the defendant or

14   his lawyer?

15            MS. SHETH:  No, Your Honor.

16            THE COURT:  Thank you.

17        And has the Government complied with the Crime Victims

18   Rights Act as to this proceeding?

19            MS. SHETH:  Yes, Your Honor.  And to that end, there

20   are family members of the victims in the gallery.

21            THE COURT:  All right.  Thank you.

22        All right.  Mr. Bell, how old are you?

23            THE DEFENDANT:  29 and -- almost 30.

24            THE COURT:  All right.  Would you describe your

25   education for me, how far you've gone in school?
```

1    THE DEFENDANT:  I got a GED.

2    THE COURT:  All right.  Are you a citizen of the

3  United States?

4    THE DEFENDANT:  Yes.

5    THE COURT:  If you weren't a citizen of the

6  United States, pleading guilty to this offense would mean that

7  you would be removed or deported from the U.S., and if you

8  later applied to become a citizen, that would be denied.  So

9  that's why I ask that question in every case.

10    You received a copy of the First Superseding Indictment?

11    THE DEFENDANT:  Yes.

12    THE COURT:  And you've discussed it over these many

13  months that this case has been around with your lawyers?

14    THE DEFENDANT:  Yes.

15    THE COURT:  You understand that the charge in

16  Count 3 to which you're offering your guilty plea is a felony.

17  If I accept your guilty plea here today, you'll be convicted,

18  found guilty of that felony.  A person who's convicted of a

19  felony loses certain civil rights, such as the right to vote,

20  the right to hold public office, the right to sit on a jury,

21  the right to own or possess a gun and ammunition of any sort.

22  Are you aware of that?

23    THE DEFENDANT:  Yes, ma'am.

24    THE COURT:  You have a number of rights in

25  connection with this case under the laws of the Constitution of

```
 1    the United States.
 2         First of all, you have the right to be represented by a
 3    lawyer at all stages of your case.  If you can't afford to hire
 4    a lawyer, the Court will appoint one to represent you at no
 5    cost or expense to you.
 6         You have the right to plead not guilty and to continue
 7    pleading not guilty.
 8         You have the right to have a speedy and public trial
 9    before a jury at which the Government would have the burden of
10    proving your guilt beyond a reasonable doubt.  You never have
11    to prove your innocence.  It's always the Government's burden
12    to prove that you're guilty beyond a reasonable doubt.
13         You have the right to see and hear the evidence that's
14    presented against you at trial and to confront and
15    cross-examine any witnesses the Government calls to testify
16    against you at trial.
17         You have the right against self-incrimination, in other
18    words, the right to remain silent.  You can't be forced to
19    testify against yourself at trial.
20         You have the right to testify on your own behalf at trial
21    if you voluntarily decide to do that.
22         You have the right to put on a defense, to call witnesses,
23    and to use the Court's subpoena power to make witnesses come to
24    court and testify on your behalf.
25         If you're convicted after a trial, you have the right to
```

 1    appeal your conviction and your sentence to a higher court, a

 2    Court of Appeals.

 3         Do you understand each of those rights?

 4              THE DEFENDANT:  Yes, ma'am.

 5              THE COURT:  Do you have any questions you'd like to

 6    ask either me or your lawyer about any of the rights that I

 7    just described to you?

 8              THE DEFENDANT:  Let me ask my lawyer one thing.

 9              THE COURT:  Certainly.

10              (An off-the-record discussion was held

11               between the defendant and his counsel.)

12              MR. AARON:  Your Honor, he had a -- a question about

13    another part of the plea agreement.  And he wants the Court to

14    explain to him, if I might, what I had indicated to him.  In

15    the event that he did decide not to plead guilty, according to

16    the agreement the Government could file an action declaring him

17    to be in breach.  If he is in breach, my understanding on Page

18    19, Paragraph C, Lines 11 to 12, is that the Government could

19    use the agreed-to factual basis in this agreement against him

20    at trial.

21              THE COURT:  I'm sorry.  What page is that?

22              MR. AARON:  Page 19, Lines 11 to 12.

23         And that whole sentence from Lines 9 to 14 reads in

24    pertinent part, "Defendant agrees that, 2, the agreed-to

25    factual basis statement in this agreement shall be admissible

1    against defendant in any such action against the defendant."

2    And I had told him that my understanding of that language is

3    that if he did not plead guilty and the Government declared him

4    to be in breach and the Court affirmed that, that they would be

5    able to use that agreed-upon factual basis against him at

6    trial.

7            THE COURT:  That is the language -- that is what

8    this language here means.

9        Now, there is -- what I'm going to get to in a moment,

10   without trying to confuse matters, Mr. Bell, is that because

11   this is a binding plea agreement, if at the end of the hearing

12   today you satisfy me that you are voluntarily and intelligently

13   deciding to plead guilty, what I'm going to do -- if that's the

14   case, then what I'm going to do is to conditionally accept your

15   guilty plea.

16       What that means is when I get the presentence report in

17   your case -- after you've been interviewed by the probation

18   officer, I get a presentence report.  And I'll review that and

19   I'll review the arguments from both sides.  And that's when I

20   make the final decision about whether to accept a binding plea

21   agreement.

22       Now, if I decide -- if I decide not -- at that point not

23   to accept your binding plea agreement, then you'll have a

24   choice.  You will have the choice then of withdrawing your

25   guilty plea and going to trial or continuing to plead guilty

 1    and being sentenced but without the benefit of the plea

 2    agreement.

 3        Now, in that event, I don't think he's in breach.  And the

 4    statements could not be used against him -- you.  That's a

 5    different scenario.

 6        Is that -- is that clear?  Does that answer your question?

 7            THE DEFENDANT:  Yes.

 8            THE COURT:  All right.  All right.  Let me know if

 9    you have any other questions.

10        All right.  So one of the rights that I mentioned a moment

11    ago that you have in connection with this case is the right to

12    appeal your conviction and your sentence.  In the plea

13    agreement that you signed at Page 15 -- oops, I'm sorry.

14            MR. AARON:  Page 17.

15            THE COURT:  Right.  Page 17.  You have agreed

16    that -- with one exception and that is an appeal based on a

17    claim that your guilty plea was involuntary.  Apart from that

18    exception, by pleading guilty, you're waiving and giving up any

19    right to appeal your conviction as to Count 3.

20        Do you understand what that means?

21            THE DEFENDANT:  Yes.

22            THE COURT:  All right.  In the next paragraph, you

23    and the Government have agreed that if I sentence you to what's

24    been agreed upon in this binding plea agreement and that is a

25    sentence of 360 months, or 30 years, a period of supervised

```
 1    release -- a lifetime period of supervised release with -- and

 2    no fine of $100 special assessment.

 3          So if I accept the plea agreement -- as I indicated, after

 4    I've read the presentence reports and both sides' sentencing

 5    papers, if I decide to accept the plea agreement, then I have

 6    to sentence you to what's been agreed upon.  And if I don't, if

 7    I sentence you to more time or less time, then you or the

 8    Government can appeal.  Do you understand that?

 9              THE DEFENDANT:  Yes, ma'am.

10              THE COURT:  All right.  Thinking back to what I said

11    to you a few moments ago about all the rights that you have in

12    this case, the right to a jury trial and to call witnesses at

13    trial, all those things, do you want to give up those rights to

14    plead guilty?

15              THE DEFENDANT:  Yes, ma'am.

16              THE COURT:  And you're not giving up the right to be

17    represented by a lawyer.  That's the first right I read to you.

18    Just all the other rights.

19          Has your lawyer advised you about the nature of the

20    charges against you and possible defenses that you might have?

21    You discussed all of that with your lawyers over the last many

22    months?

23              THE DEFENDANT:  Possible defenses?

24              THE COURT:  Right.  The charges against you, what

25    you're charged with and what defenses that you might have.
```

```
 1                    THE DEFENDANT:  Yes.

 2                    THE COURT:  All right.  Are you on parole or

 3     probation with any other court?

 4                    THE DEFENDANT:  No, ma'am.

 5                    THE COURT:  Okay.  And have you been advised about

 6     the longest possible sentence that the law allows for the crime

 7     that you're pleading guilty to?

 8                    THE DEFENDANT:  For a life sentence.

 9                    THE COURT:  All right.  I'm -- that's correct, but

10     I'll ask Ms. Sheth to state on the record the maximum sentence.

11                    MS. SHETH:  Your Honor, the maximum sentence in this

12     case to which the count -- to which the defendant is pleading

13     guilty, Count 3, is a lifetime term of imprisonment, a lifetime

14     period of supervised release, a fine of $250,000 or twice the

15     gross gain or gross loss resulting from the offense, whichever

16     is greatest, and a mandatory special assessment of $100.

17                    THE COURT:  And the -- there's also a mandatory

18     minimum sentence.  And could you please state that on the

19     record?

20                    MS. SHETH:  Yes, Your Honor.

21        The mandatory minimum sentence at issue for the count that

22     the defendant is pleading guilty to is 15 years' imprisonment

23     if the offense involved force, threats of force, fraud or

24     coercion, or any combination of such means, followed by a

25     five-year period of supervised release, and a mandatory special
```

```
 1   assessment of $100.

 2        Your Honor, there's also -- in the plea agreement, it

 3   provides how -- that the defendant under certain circumstances,

 4   if he was convicted of a certain offense previously, would fall

 5   under a lifetime period of incarceration as a mandatory minimum

 6   under 18 U.S.C. 3550 -- 3559(e); however, the parties have

 7   previously been given a pre-plea report and don't believe

 8   that's an issue.

 9             THE COURT:  All right.  Did you understand what the

10   attorney for the Government just said, Mr. Bell?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  All right.  In the federal system, we

13   don't have parole.  So if you're sentenced to prison, you won't

14   be released early on parole.  But when you are released, you're

15   released on what we call supervised release which is similar to

16   parole.  You're released, but there are still rules and

17   conditions that apply.  And a lot of these conditions have been

18   described in your plea agreement.

19        If you violate any of the conditions of your supervision

20   after you've been released, you could be returned to prison.

21   Do you understand that?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Federal judges are required to consider

24   the United States Sentencing Guidelines and a number of other

25   factors in deciding what sentence is reasonable in a criminal
```

Case 1:12-cr-00052-VA, 05/12/2015 ID: 9535153, DktEntry: 15-3, Page 56 of 76
Case 5:12-cr-00057-VAP Document 370 Filed 03/03/14 Page 21 of 41 Page ID #:2399

21

 1   case.  You and your lawyer talked in general terms about the

 2   Sentencing Guidelines and how they might apply in your case?

 3            THE DEFENDANT:  Yes, ma'am.

 4            THE COURT:  So as I said to you earlier this

 5   morning, after today, before you're sentenced, you'll be

 6   interviewed by a probation officer.  And then he or she does an

 7   investigation into both your background and into this offense

 8   and prepares a written report.  You have the right to see that

 9   report and to discuss it with your lawyer before you're

10   sentenced.  So after the report has been disclosed and you've

11   seen it, then your lawyer and the lawyer for the Government

12   will each file a sentencing brief.

13        Now, because of the plea agreement in this case, as you

14   know, the plea agreement says that the agreed-upon sentence

15   between the parties is a sentence of 30 years.  So I will, as I

16   said a moment ago, consider everything that is reported to me

17   by Probation and everything that both sides submit in

18   connection with the sentencing briefs before I make a decision

19   as to whether to accept the plea agreement and sentence you to

20   30 years.

21        If I don't accept the plea agreement, then as I told you,

22   you would have the right to withdraw your guilty plea and go to

23   trial.  And if I do accept the plea agreement, then I'm

24   agreeing to honor the parties' agreement here and sentence you

25   to 30 years.

22

```
 1        Do you understand that?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  Has anyone made any threats against you

 4   or anyone in your family or anyone else in order to get you to

 5   plead guilty?

 6            THE DEFENDANT:  No.

 7            THE COURT:  Other than what's contained in the plea

 8   agreement, other than what was discussed here in court this

 9   morning, and other than the discussion that you had with your

10   lawyers about the Sentencing Guidelines and how they might

11   apply in your case, but most especially what's in the plea

12   agreement here, has anyone promised you what sentence you would

13   get?

14            THE DEFENDANT:  No, ma'am.

15            THE COURT:  All right.  Has anyone made you any

16   other promises of any kind in order to get you to plead guilty?

17            THE DEFENDANT:  No.

18            THE COURT:  Do you feel that you understand

19   everything that we have discussed here today?

20            THE DEFENDANT:  Yes.

21            THE COURT:  Do you feel that you understand what the

22   consequences are to you of pleading guilty, especially under

23   this plea agreement?

24            THE DEFENDANT:  Yes.

25            THE COURT:  And do you feel that you are competent
```

```
 1    and able to make the decision to plead guilty?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Is your decision to plead guilty

 4    voluntary on your part?

 5              THE DEFENDANT:  Yes.

 6              THE COURT:  Mr. Bell, you have the right at this

 7    time to have the charge in Count 3 of the First Superseding

 8    Indictment read out loud to you.  Do you wish to have it read

 9    out loud to you at this time?

10              THE DEFENDANT:  No, ma'am.

11              THE COURT:  You've read it before?

12              THE DEFENDANT:  A lot.

13              THE COURT:  You understand exactly what you're

14    charged with in Count 3?

15              THE DEFENDANT:  Yes.

16              THE COURT:  All right.  How do you plead to Count 3

17    of the First Superseding Indictment which charges you with a

18    violation of Title 18, United States Code, Section 1591(a)(1),

19    (a)(2), (b)(1), (b)(2), that is, sex trafficking of a minor?

20    Guilty or not guilty.

21              THE DEFENDANT:  Guilty.

22              THE COURT:  Are you pleading guilty because you did

23    what you're charged with in Count 3?

24              THE DEFENDANT:  Guilty.

25              THE COURT:  All right.  So is that a "yes" to my
```

```
 1   question?

 2            THE DEFENDANT:  Yes.

 3            THE COURT:  All right.  I'm going to ask the

 4   attorney for the Government to set out for us what the elements

 5   are in general that the Government would have to prove at trial

 6   for this offense.

 7      Ms. Sheth.

 8            MS. SHETH:  Yes.  Thank you, Your Honor.

 9      The Government would have to prove the following facts at

10   trial:  Number 1, that the defendant knowingly recruited,

11   enticed, harbored, transported, provided, obtained, or

12   maintained a person or benefitted, financially or by receiving

13   anything of value, from participation in a venture that had --

14   that engages in an act as described below; and 2, that the

15   defendant knowing or in reckless disregard of the fact that

16   force, threats of force, fraud, coercion or any combination of

17   such means would be used to cause the person to engage in

18   commercial sex acts or that the person had not yet attained the

19   age of 18 years and would be caused to engage in commercial sex

20   acts and defendant had the reasonable opportunity to observe

21   the person or know the person's age; and 3, that the

22   defendant's actions were in or affecting interstate commerce.

23      And in order for defendant to be subject to that 15-year

24   mandatory minimum I stated before, the Government must prove

25   either that the offense was effected by means of force, threats
```

```
 1   of force, fraud, or coercion, or any combination of those

 2   means.

 3           THE COURT:  All right.  And next, Mr. Bell, I'm

 4   going to ask the attorney for the Government to set forth the

 5   facts that the Government believes it would have been able to

 6   prove at trial if this case had gone to trial.

 7       As I said earlier, the Government always has the burden of

 8   proving the facts at trial beyond a reasonable doubt.  So

 9   please listen carefully to the statement.  At the end of it,

10   I'm going to ask you if there's anything in it that you

11   disagree with or object to.  If you -- and if there is, you'll

12   have a chance to tell me that.

13       On the other hand, if you agree with this statement of the

14   facts and agree the Government can prove these facts at trial

15   beyond a reasonable doubt, then this statement will become the

16   factual basis for your guilty plea.

17       Do you understand?

18           THE DEFENDANT:  Yes, ma'am.

19           THE COURT:  All right.  Ms. Sheth?

20           MS. SHETH:  Thank you, Your Honor.

21       The Government believes it could prove the following facts

22   at trial:

23       Between at least approximately January 2011 through July

24   2011, defendant knowingly recruited, enticed, harbored,

25   transported, provided, obtained, and maintained by any means,
```

 1   and benefitted financially from his participation in a venture

 2   which recruited, enticed, harbored, transported, provided,

 3   obtained, and maintained individuals, including Victim 3,

 4   Victim 4, Victim 5, and Victim 7, among others, knowing that

 5   force, threats of force, fraud and coercion would be used to

 6   cause the victims to engage in commercial sex acts and also

 7   knowing that the victims had not yet attained the age of

 8   18 years and would be caused to engage in commercial sex acts.

 9   Defendant's actions were in or affecting interstate commerce.

10        Within Riverside and Los Angeles Counties, defendant would

11   recruit female victims to employ them in his sex prostitution

12   business.  He would then harbor them in hotels on or near

13   Long Beach Boulevard in the general area of Compton,

14   California, and at his residence located on Euclid Boulevard in

15   Lynwood, California, or the "Euclid Residence."

16        Defendant had female victims, including the victims I

17   previously mentioned, work for him as prostitutes.  And in

18   doing so, he would have them stand and walk around in areas

19   known for prostitution, including Long Beach Boulevard, to

20   solicit "dates" or male customers for prostitution.  Defendant

21   instructed the female victims to charge certain amounts of

22   money for different types of sex acts.  Defendant also told

23   minor victims to follow certain rules.  For example, minor

24   victims were told not to get into vehicles with more than one

25   customer in them and were told to give all of the money they

 1   earned from prostitution to defendant soon after a "date" was

 2   complete.  If the minor victims did not follow defendant's

 3   rules, defendant would sometimes hit and physically abuse the

 4   victims in order to cause them to engage in commercial sex acts

 5   and punish them when they did not follow the rules.

 6        Defendant also maintained minor victims knowing that they

 7   would be caused to engage in commercial sex acts.  For example,

 8   on February 15th, 2011, defendant drove Victim 3, Victim 5, and

 9   a co-conspirator Javiya Brooks to a medical clinic in order to

10   have them tested for sexually transmitted diseases.

11        Defendant would use his cellular phone to keep in touch

12   with and instruct the minor victims and his co-conspirators.

13   Defendant benefitted financially from causing the minor victims

14   to engage in prostitution.

15        Among others, defendant used Victim 3, then 16; Victim 4,

16   then 17; Victim 5, then 15; and Victim 7, then 17, as

17   prostitutes and harbored them at his Euclid residence.

18   Co-conspirator Javiya Brooks acted as defendant's "bottom,"

19   meaning his most trusted prostitute who was at times

20   responsible for managing and taking care of defendant's other

21   prostitutes.  From at least January 2011 to July 2011, Brooks

22   lived mainly at the Euclid residence and supervised defendant's

23   prostitutes at his direction.

24        Also, at times when defendant was incarcerated, other

25   co-conspirators, including Samuel Rogers and Gary Rogers and

1   Christopher Weldon, would supervise the prostitution activities

2   of defendant's prostitutes, including minor victims such as

3   Victim 3.  At times, when Samuel Rogers was incarcerated,

4   defendant would harbor and supervise the prostitution

5   activities of prostitutes who normally worked for

6   Samuel Rogers, including minor victims such as Victim 4.

7        Defendant Samuel Rogers, Gary Rogers, and

8   Christopher Weldon would often discuss the management of the

9   prostitutes, the prostitution business, and the proceeds of

10  prostitution on joint conference calls when talking on the

11  telephone.  Furthermore, Victim 3 and Victim 5, both of whom

12  worked as defendant -- for defendant as prostitutes, were first

13  recruited to engage in commercial sex acts by Samuel Rogers and

14  another co-conspirator Kimberly Alberti who was Samuel Rogers'

15  bottom.

16       Also, co-defendant Su Yan aided defendant in managing his

17  prostitution business while he was incarcerated in August of

18  2011 by picking up prostitution proceeds, driving prostitutes

19  to dates, and making phone calls for defendant in order to

20  further his prostitution business, among other things.

21       Specifically, in April of 2011, Victim 4, then 17, worked

22  as a prostitute for defendant while Samuel Rogers was

23  incarcerated.  During that time, defendant harbored Victim 4 at

24  the Euclid residence with other prostitutes defendant employed.

25  Also, during that time, defendant knew that Victim 4 was

1    17 years old.  While working as a prostitute under defendant's

2    supervision and direction, on or about April 6th, 2011,

3    defendant physically abused Victim 4 for not performing as a

4    prostitute and for acting up.  Therefore -- I'm sorry.

5    Therefore, defendant used force to cause Victim 4 to engage in

6    commercial sex acts.

7         Also, from approximately May to August of 2011, Victim 7,

8    then 17, worked as a prostitute for defendant.  During that

9    time, defendant instructed Victim 7 to reside at the Euclid

10   residence with other prostitutes defendant employed.  During

11   that time, defendant knew that Victim 7 was 17 years old.

12   Defendant often threatened Victim 7 with force during phone

13   calls with Victim 7 while defendant was incarcerated.

14        Also, on or about -- on or before April 7th, 2008,

15   defendant was convicted of a felony crime for which he received

16   a term of imprisonment exceeding one year.  On or about

17   May 4th, 2011, in Los Angeles County, within the Central

18   District of California, defendant knowingly possessed a

19   firearm; namely, an Intratec model, Tec -- Tec DC9 pistol with

20   the serial number removed, in and affecting interstate and

21   foreign commerce.

22             THE COURT:  Thank you.

23        Do you need a moment, Mr. Aaron?

24             MR. AARON:  May I?

25             THE COURT:  Certainly.

Case 5:12-cr-00057-VAP2, 05/12/2015 HD, 9535153, DktEntry: 15-30Page 65 of 76
Case 5:12-cr-00057-VAP  Document 370  Filed 03/03/14  Page 30 of 41  Page ID #:2408

30

 1          (An off-the-record discussion was held

 2           between the defendant and his counsel.)

 3          MR. AARON:  Thank you, Your Honor.

 4          THE COURT:  All right.  Mr. Bell, do you agree with

 5   what the attorney for the Government just stated?

 6          THE DEFENDANT:  No.

 7          THE COURT:  Is there anything in that statement of

 8   facts that you disagree with or object to?

 9          THE DEFENDANT:  I would like -- she put the names in

10   the agreement.  Because if I'm going through my time, like, I

11   want to take all these names out, my co-conspirators, these

12   victims.  Just let me go do my sentence.  I don't want to have

13   a plea agreement with anybody else's name in it.

14       So I disagree with the -- the statement that she made,

15   what I did with other co-conspirators because I feel like she

16   don't know.  The way she worded it, I feel like it ain't right.

17   I'm not really objecting to it.  I'm ready to proceed, but I

18   want to proceed without my brother's name in it, without

19   people's names in my plea agreement.

20          THE COURT:  All right.  Mr. Aaron?

21          MR. AARON:  We would agree, Your Honor, that in lieu

22   of the names -- for example, Samuel Rogers or

23   Christopher Weldon -- that the Government could insert "the

24   co-conspirators named in the First Superseding Indictment."

25          THE COURT:  Is that agreeable to the Government?

```
 1              MS. SHETH:  Your Honor, if you'll give me one
 2    moment?
 3              THE COURT:  Certainly.
 4              (An off-the-record discussion was held
 5               between Government counsel.)
 6              MS. SHETH:  Yes.  Your Honor, the Government would
 7    be prepared to file an amended plea agreement so long as it has
 8    the signatures of the defense attorneys and the defendant so
 9    that everywhere a co-conspirator is named, it could replace it
10    with just the words "co-conspirator" or "co-conspirators."
11              THE COURT:  Well, I don't know that we have to have
12    a new plea agreement filed.  I just think for the record all
13    that needs to be done is that the Government agrees -- and we
14    don't need to re-read the entire factual basis.  But I think
15    that Mr. Bell's objection is to the names of the
16    co-conspirators, so if those are ordered stricken and replaced
17    with the term "the co-conspirators named in the First
18    Superseding Indictment."  Is that agreeable?
19              MS. SHETH:  Yes, Your Honor.  That is agreeable.
20              THE COURT:  All right.  So with that change,
21    Mr. Bell, do you agree with the statement read into the record
22    by the attorney for the Government?
23              THE DEFENDANT:  I mean, some of it -- some of it.
24              THE COURT:  Okay.  Well, it's all or nothing.  So
25    we've made the -- one change that doesn't affect the factual
```

```
1    basis.  But are there any other objections that you have,

2    specific objections?

3               THE DEFENDANT:  From what I discussed with my

4    lawyer --

5               THE COURT:  Do you need to have time to talk to your

6    lawyer again?

7               THE DEFENDANT:  No.  I'm telling you I already

8    talked to him about it, to take out certain pieces of the

9    parts.  It really holds no relevance because they just need a

10   little piece.  So it don't matter.

11              MR. AARON:  May I have just one moment?

12              (An off-the-record discussion was held

13               between the defendant and his counsel.)

14              MR. AARON:  Your Honor, we object to the following:

15   On Page 13, Lines 2 through 6, and Page 14, Lines 20 to 21.

16   And that was it.

17              THE COURT:  Lines -- I'm sorry.  Page 14, what

18   lines?

19              MR. AARON:  Page 14, Lines 20 to 21, the sentence

20   beginning "Also" and ending "old."

21              MS. SHETH:  I'm sorry.  What was that second change

22   again?

23              MR. AARON:  Page 14, Line 20, where it begins with

24   "Also" and Line 21 where it ends with "old."

25              THE COURT:  I don't think that affects the validity
```

```
 1   of the factual basis, given the other -- given what's at, for
 2   example, Page 12, Lines 11 and 12.
 3              MS. SHETH:  Your Honor, I -- the Government agrees,
 4   that without the two statements that the defense counsel
 5   mentioned, the Government would be prepared to go forward with
 6   the factual basis.
 7              THE COURT:  All right.  Are there any other
 8   objections?
 9              THE DEFENDANT:  No.
10              MR. AARON:  That's it, Your Honor.
11              THE COURT:  All right.  So with those changes,
12   Mr. Bell, do you agree with the statement that was read into
13   the record by counsel for the Government?
14              THE DEFENDANT:  Yeah.
15              THE COURT:  Do you agree that the Government could
16   prove those facts beyond a reasonable doubt if your case had
17   gone to trial?
18              THE DEFENDANT:  I don't -- I don't know how --
19   what's a "reasonable doubt"?
20              THE COURT:  Okay.
21              THE DEFENDANT:  I mean --
22              THE COURT:  Do you want me to read the definition of
23   "reasonable doubt" to you?
24              THE DEFENDANT:  Yeah.
25              (An off-the-record discussion was held
```

```
 1                between the defendant and his counsel.)

 2                MR. AARON:  Your Honor, that's fine.  He's ready to

 3     proceed.

 4                THE COURT:  Okay.  I'm going to ask the question

 5     again.  You've had a moment to talk to your lawyer.

 6          Do you agree that the Government could prove the facts

 7     that were set forth on the record by the attorney for the

 8     Government beyond a reasonable doubt if your case had gone to

 9     trial?

10                THE DEFENDANT:  Yes.

11                THE COURT:  Mr. Aaron, do you join in agreeing that

12     the Government has the evidence in this case to prove the facts

13     just stated beyond a reasonable doubt?

14                MR. AARON:  Yes, Your Honor.

15                THE COURT:  Mr. Bell, are you under the care --

16     receiving treatment from any doctor, physician, or other

17     medical professional at this time?

18                THE DEFENDANT:  Psychiatric?  No.

19                THE COURT:  Okay.  Any medical care at all?

20                THE DEFENDANT:  Yes.

21                THE COURT:  What -- what are you receiving treatment

22     for?

23                THE DEFENDANT:  I got a gunshot wound in my leg, and

24     I get treatment for that.

25                THE COURT:  All right.  What kind of treatment are
```

```
 1   you currently receiving?

 2              THE DEFENDANT:  Just pain medication.  Pain

 3   medication.

 4              THE COURT:  Pain medication?  Do you know the name

 5   of the medicine?

 6              THE DEFENDANT:  Tramadol.  Tramadol.

 7              THE COURT:  How often do you take it?

 8              THE DEFENDANT:  Three times a day.

 9              THE COURT:  When's the last time you took it?  This

10   morning?

11              THE DEFENDANT:  Yeah.

12              THE COURT:  Does it interfere with your ability to

13   think clearly?

14              THE DEFENDANT:  No.

15              THE COURT:  All right.  Are there any other

16   medicines that you're taking regularly?

17              THE DEFENDANT:  No.

18              THE COURT:  Either prescription or -- or

19   over-the-counter, non-prescription?

20              THE DEFENDANT:  No.

21              THE COURT:  Are you receiving any psychiatric or

22   psychological care?

23              THE DEFENDANT:  No.

24              THE COURT:  Do you understand that if I accept your

25   guilty plea, the only thing left in your case is sentencing,
```

```
 1    there won't be a trial in your case?
 2              THE DEFENDANT:  Yes.
 3              THE COURT:  Do you know of any reason why I should
 4    not accept your guilty plea today?
 5              THE DEFENDANT:  Less time.
 6              THE COURT:  Pardon me?
 7              THE DEFENDANT:  Less time, like less -- less than
 8    30 years.
 9              THE COURT:  In other words, you wish that you were
10    getting less time?
11              THE DEFENDANT:  Yeah.
12              THE COURT:  Do you know of any other reason?
13              THE DEFENDANT:  No.
14              THE COURT:  Okay.  Thank you.
15         Mr. Aaron, has your client been competent and able to
16    cooperate with you?
17              MR. AARON:  Yes, Your Honor.
18              THE COURT:  You discussed the facts of the case in
19    detail with him?
20              MR. AARON:  Yes, Your Honor.
21              THE COURT:  Are you satisfied that there are no
22    meritorious defenses he might raise as to Count 3?
23              MR. AARON:  Yes, Your Honor.
24              THE COURT:  Are you satisfied his constitutional
25    rights have been observed?
```

1    MR. AARON:  Yes, Your Honor.

2    THE COURT:  Have you advised your client about the

3    legality or admissibility of any statements, confession, or

4    other evidence the Government may have obtained in this case?

5    MR. AARON:  Yes, Your Honor.

6    THE COURT:  Is your client pleading guilty because

7    of any illegally obtained evidence in the Government's

8    possession that you're aware of?

9    MR. AARON:  No, Your Honor.

10    THE COURT:  Are you of the opinion that your client

11    understands the nature of these proceedings and the

12    consequences of his guilty plea?

13    MR. AARON:  Yes, Your Honor.

14    THE COURT:  Has he told you anything about

15    medications, drugs, or other factors which might affect his

16    actions or judgment in any manner?

17    MR. AARON:  Not otherwise than in court, Your Honor.

18    THE COURT:  All right.  Other than the proceedings

19    here in court, the contents of the Rule 11 plea agreement, and

20    other than a general discussion of the 3553(a) factors and the

21    Sentencing Guidelines, have you conveyed any promise of a

22    particular sentence?

23    MR. AARON:  No, Your Honor.

24    THE COURT:  Based on your analysis of the law, after

25    your own investigation of the facts, and after consulting with

```
 1   your client, do you believe it's in his best interest to plead

 2   guilty to this charge?

 3            MR. AARON:  Yes, Your Honor.

 4            THE COURT:  Mr. Bell, do you -- have you had enough

 5   time to discuss --

 6            THE DEFENDANT:  Yes.

 7            THE COURT:  -- both your case in general and your

 8   decision to plead guilty with your lawyers?

 9            THE DEFENDANT:  I had enough time to plead guilty,

10   yes.

11            THE COURT:  Are you satisfied that your lawyers have

12   fully considered any defenses that you might have in this case?

13            THE DEFENDANT:  As satisfied as I can be.  I mean --

14            THE COURT:  You discussed your defense -- possible

15   defenses and so forth with your lawyers over the last many

16   months?

17            THE DEFENDANT:  Yes.

18            THE COURT:  All right.  Are you satisfied with the

19   representation that your lawyers have provided you in this case

20   and the advice that they've given you?

21            THE DEFENDANT:  Honestly, yes.

22            THE COURT:  All right.  All right.  The Court has

23   questioned the defendant and his lawyer on the offer of the

24   defendant's plea of guilty to Count 3 in the First Superseding

25   Indictment, a felony, and the defendant and his lawyer, having
```

```
 1    told the Court that they've thoroughly discussed all aspects of

 2    the charge against the defendant and any defenses he may have;

 3    the Court having observed the defendant in answering the

 4    Court's questions, having observed his demeanor and manner

 5    while doing so, as well as his careful consideration of every

 6    one of the Court's questions; and having observed that the

 7    defendant does not appear to be under the influence of any

 8    medicine, drug, or other substance or factor which could affect

 9    the actions or judgment of the defendant in any manner;

10    therefore, the Court finds that the offer of the defendant's

11    plea of guilty to Count 3 in the First Superseding Indictment

12    has a factual basis, is free of any coercive influence of any

13    kind, is voluntarily made with full knowledge of the charges

14    against him and the consequences of his guilty plea, that no

15    promises of any kind have been made to anyone -- made to him by

16    anyone, and no coercion or threats of any kind have been

17    exerted upon him in any manner.  So it's ordered that the plea

18    of guilty to Count 3 in the First Superseding Indictment shall

19    be accepted and entered on today's date.

20         And as to -- the decision as to whether to accept the

21    11(c)(1)(C) plea agreement, the Court defers that decision

22    until after receipt and review of the presentence report and

23    the sentencing briefs in this case.

24         So a date for sentencing?

25              THE COURTROOM DEPUTY:  March 31.
```

```
 1            THE COURT:  All right.  The matter is set for

 2    sentencing on Monday, March 31st, 2014, at 9:00 a.m.

 3        And the plea agreement is ordered incorporated into the

 4    record with the modifications to the factual basis that were

 5    expressed on the record.

 6            MS. SHETH:  Thank you, Your Honor.

 7            MR. AARON:  Thank you, Your Honor.

 8            MR. GRANT:  Thank you, Your Honor.

 9            (Proceedings concluded at 10:57 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**UNITED STATES DISTRICT COURT**      **000072**

1 **CERTIFICATE OF OFFICIAL REPORTER**

2

3 COUNTY OF LOS ANGELES   )
                          )
4 STATE OF CALIFORNIA     )

5

6           I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT

7 REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE

8 CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT

9 TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING

10 IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY

11 REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT

12 THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE

13 REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

14

15

16

17           DATED THIS 28TH DAY OF FEBRUARY, 2014.

18

19

20           /S/ MYRA L. PONCE
   _____
21 MYRA L. PONCE, CSR NO. 11544, RMR, CRR
         FEDERAL OFFICIAL COURT REPORTER
22

23

24

25

**UNITED STATES DISTRICT COURT**          **000073**